**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **WILLIAM MICHAEL JONES,** | CV 00-1795-BR |
| **Plaintiff,** | **OPINION AND ORDER** |
| **v.** | |
| **ROBERT ROSE,** *et al.,* | |
| **Defendants.** | |

**WILLIAM MICHAEL JONES**
2716 N.E. Mason St.
Portland, OR 97211
(503) 284-0502

Plaintiff, *Pro Se*

**KELLY A. JOHNSON**
Acting Assistant Attorney General
Environmental & Natural Resource Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044
(202) 305-0210

**MICHAEL J. ZEVENBERGEN**
Environmental & Natural Resource Division
Environmental Defense Section
United States Department of Justice
c/o NOAA
7600 Sand Point Way N.E.
Seattle, WA 98115
(206) 526-6607

**CYNTHIA J. MORRIS**
Environmental & Natural Resource Division
Environmental Defense Section
United States Department of Justice
P.O. Box 23986
Washington, D.C. 20026
(202) 616-7554

**MISTY LATCU**
Portland District, Corps of Engineers
333 SW First Avenue
Portland, OR 97204
(503) 808-4527

      Attorneys for Federal Defendants

**LINDA MENG**
City Attorney
**TERENCE L. THATCHER**
Deputy City Attorney
1200 S.W. Fourth Ave.
Portland, OR 97210
(503) 823-4047

      Attorneys for City of Portland Defendants

**HARDY MYERS**
Attorney General
**JOHN URQUHART**
Assistant Attorney General
Department of Justice
1162 Court St.
Salem, OR 97301
(503) 378-6313

      Attorneys for State of Oregon Defendants

**CARLA L. KELLEY**
Port of Portland
121 N.W. Everett St.
P.O. Box 3529
Portland, OR 97208
(503) 944-7031

**JEFFREY W. LEPPO**
**SCOTT J. KAPLAN**
Stoel Rives LLP
600 University St., Suite 3600
Seattle, WA 98101
(206) 624-0900

        Attorneys for Defendant Port of Portland

**DONALD H. PYLE**
Lane Powell Spears Lubersky, LLP
601 S.W. Second Ave., Suite 2100
Portland, OR 97204
(503 778-2100

        Attorneys for Defendant Miles L. Marsh

**LEE S. ARONSON**
Schulte Anderson Downes Aronson Bittner
811 S.W. Naito Parkway
Suite 500
Portland, OR 97204
(503) 223-1345

        Attorneys for Defendant Peggy Fowler


**BROWN, Judge.**

        This matter comes before the Court on multiple evidentiary

motions and Motions for Summary and/or Partial Summary Judgment

filed by Plaintiff, Federal Defendants, City of Portland

Defendants, and Defendant Port of Portland.

**PROCEDURAL BACKGROUND AND REMAINING ISSUES**

On December 29, 2000, Plaintiff filed a Complaint alleging Defendants illegally disposed of dredged materials on and around West Hayden Island (WHI) in violation of the Clean Water Act (CWA), 33 U.S.C. § 1251, *et seq.;* the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.;* and the United States Constitution.

This case was originally assigned to the Honorable Robert E. Jones. In response to numerous dispositive motions, Judge Jones issued Opinions and Orders[1] dismissing a number of Defendants and reducing the number of claims to be resolved. On June 23, 2004, this case was reassigned to the undersigned judicial officer. On

---

[1] Judge Jones issued Opinions and Orders on (1) March 22, 2002, dismissing Plaintiff's CWA claim against Portland General Electric Company (PGE); (2) April 5, 2002, dismissing Plaintiff's Administrative Procedure Act (APA) claims against the Environmental Protection Agency (EPA) based on alleged violations of § 505(a)(2) of the CWA, 33 U.S.C. § 1365(a)(2); (3) May 3, 2002, dismissing Plaintiff's claims against the Port for dredging activities before 1972; (4) August 11, 2003, declaring the Ordinary High Water Line rather than the High Tide Line as the jurisdictional boundary for United States waters on the Columbia River; (5) March 5, 2004, dismissing Plaintiff's CWA claim against the EPA; and (6) March 19, 2004, affirming the Army Corps of Engineers' (Corps) wetlands delineation.

This Court previously advised the parties that it will not reconsider previous rulings on dispositive motions. Tr. 5: 8-13 (hearing held Dec. 8, 2004).

September 17, 2004, this Court issued an Opinion and Order

dismissing Plaintiff's APA claims arising before December 29,

1994. Tr. 5: 8-13.

On October 26, 2004, this Court issued an Order identifying

Plaintiff's unresolved claims to date as follows:

1. The City of Portland and the Port of Portland violated

§§ 301 and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344(a), when

they discharged dredged and fill materials on the wetlands of WHI

after December 29, 1994, without a valid permit;

2. Federal Defendants, by and through the Corps, violated

the Administrative Procedure Act (APA), 5 U.S.C. § 500, *et seq.,*

when they violated the CWA, and violated NEPA when the Corps

failed to determine the environmental impact of the placement of

dredge and fill material on WHI;

3. Federal Defendants violated the APA when the Corps

failed to obtain certifications from permittees to place dredge

and fill materials on WHI as required by § 401 of the CWA, 33

U.S.C. § 1341(a); and

4. Federal Defendants violated Plaintiff's substantive due

process rights under the Ninth Amendment to the United States

Constitution by infringing on Plaintiff's fundamental liberty

interest to use the rights conferred under the Public Trust

Doctrine.

## RULINGS ON PENDING MOTIONS

### Evidentiary Motions

**I.    Plaintiff's Motions.**

The Court:

A.    **DENIES** Plaintiff's Sixth Motion to Take Judicial Notice (#423) and

B.    **DENIES** Plaintiff's Motion to Compel (#421).

**II.   Federal Defendants' Motions.**

The Court:

A.    **GRANTS** Federal Defendants' Motion to Strike Plaintiff's Tenth Affidavit (#431) and

B.    **GRANTS** Federal Defendants' Motion to Strike Plaintiff's Thirteenth Affidavit (#477).

**III.  Port's Motion.**

The Court **GRANTS** the Port's Joinder in Federal Defendants' Motion to Strike Plaintiff's Tenth Affidavit (#457).

### Summary Judgment Motions

**I.    Federal Defendants' Motions.**

The Court:

A.    **GRANTS** Federal Defendants' Motion for Summary Judgment (#466) as to Plaintiff's claims against the Environmental Protection Agency (EPA);

B.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#469) as to Plaintiff's claim against Federal Defendants based on the Corps's alleged nondisclosure of information in violation of § 404(o) of the CWA, 33 U.S.C. § 1344(o);

C.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#474) as to Plaintiff's claim against Federal Defendants based on the Corps's determination that the Ordinary High Water Line marks the jurisdictional boundary of United States waters at WHI;

D.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#479) as to Plaintiff's claim regarding the 2002 Channel Deepening Environmental Impact Statement (2002CDEIS).  In addition, the Court will permit Plaintiff to file a motion for leave to amend his Complaint no later than September 22, 2005, for the sole purpose of adding a claim that the 2002CDEIS violates NEPA.  If Plaintiff files such a motion, any response by Federal Defendants is due no later than October 3, 2005, and no reply will be permitted.  Memoranda in support of and in opposition to the motion shall be limited to ten (10) pages.  If Plaintiff files such a motion and the Court grants it, Federal Defendants shall have leave to file a dispositive motion against Plaintiff's 2002CDEIS claim;

E.  **DENIES** Federal Defendants' Motion for Partial Summary Judgment (#481) as to Plaintiff's claim against Federal

7 - OPINION AND ORDER

Defendants regarding the validity of Permit 97-1482; and

F. **DENIES** Federal Defendants' Motion for Summary Judgment (#487) as to Plaintiff's NEPA claims against Federal Defendants regarding the 1998 Supplemental Environmental Impact Statement (1998SEIS).

## II. <u>City Defendants' Motions</u>.

The Court:

A. **GRANTS in part** and **DENIES in part** City Defendants' Motion for Partial Summary Judgment (#395) regarding the inadequacy of Plaintiff's CWA 60-day Notice and

B. **GRANTS in part** and **DENIES in part** City Defendants' Motion for Summary Judgment (#503) regarding Plaintiff's claim that the City unlawfully filled wetlands on WHI without a permit.

## III. <u>Defendant Port's Motions</u>.

The Court:

A. **GRANTS** the Port's Motion for Partial Summary Judgment (#408) based on the inadequacy of Plaintiff's CWA 60-day Notice;

B. **GRANTS** the Port's Motion for Partial Summary Judgment (#411) as to Plaintiff's claims against the Port arising from the Port's alleged failure to comply with the terms of Permit 5254 issued by the Corps;

C. **DENIES as moot** the Port's Motion for Summary Judgment (#462) as to any current claims by Plaintiff against the Port

arising under the APA or NEPA or from "ultra vires" claims against Federal Defendants; and

D.   Construes the Port's Motion for Summary Judgment (#471) as to Plaintiff's claim under the Public Trust Doctrine and Plaintiff's claim that the Port does not own the land comprising the "Gateway Triangle" on WHI as a Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1), **GRANTS** the Port's Motion, and **DISMISSES** these claims**.**

**IV.   Plaintiff's Motions**.

The Court:

A.   **DENIES** as premature Plaintiff's Cross-Motion for Partial Summary Judgment (#494) against the Port for allegedly building a containment dike on WHI without a CWA permit,

B.   **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment (#496) against Federal Defendants and the Port and **DENIES as moot** Plaintiff's Cross-Motion (#496) against PGE that these Defendants disposed of dredged material into WHI wetlands without a CWA permit, and

C.   **DENIES** as premature Plaintiff's Cross-Motion for Partial Summary Judgment (#507) that Federal Defendants failed to take action against the Port for disposing of dredged material on WHI in violation of the CWA.

## EVIDENTIARY MOTIONS

## Discussion

I. **Plaintiff's Motions.**

    A. **Sixth Motion to Take Judicial Notice (#423)**.

Plaintiff requests this Court to take judicial notice of (1) "the geographic fact the Columbia River was tidal in the past and continues to be tidal now" and (2) "Federal Administrative documents establish the Columbia River's navigability as a tidal water with annual freshets that average twenty-one feet mean sea level."

Plaintiff brought the identical Motion before Judge Jones as part of a previous Motion for Partial Summary Judgment. Judge Jones rejected Plaintiff's Motion. Judge Jones found the Corps's determination that the waters around WHI are nontidal was not arbitrary and capricious and, therefore, was entitled to deference under the APA. *See* Opin. and Order at 10, 13 (issued Aug. 11, 2003). As noted, this Court will not reconsider previous rulings on dispositive motions.

Accordingly, the Court **DENIES** Plaintiff's Sixth Motion to Take Judicial Notice.

    B. **Motion to Compel (#421)**.

Plaintiff moves for an order compelling Federal Defendants to produce 54 separate categories of documents described in

Plaintiff's "Fourth Discovery Request of Federal Defendants."
The discovery request, which also included approximately 223
Requests for Admissions (inclusive of subparts), was 162 pages
long.[2]  The Request was hand-delivered to the Corps's office on
January 21, 2005.  Federal Defendants' counsel received the
Request on January 25, 2005, and responded on February 23, 2005,
by generally objecting to its length, asserting many of the
Requests for Admissions sought discovery of "purely legal
propositions," and advising Plaintiff that Federal Defendants'
counsel would confer with him to facilitate a response to
"properly-tailored discovery" and "to narrow the Discovery
Request and to promptly respond to those narrowed requests."

Plaintiff asserts Federal Defendants' response was untimely
because it was made 34 days after it was received by the Corps.
In addition, Plaintiff asserts the response was inadequate
because Federal Defendants did not set forth each request to
which they objected and give a separate statement of reasons for
each objection pursuant to Local Rule (LR) 34.2(a).

Federal Defendants assert Plaintiff's Motion to Compel is
moot because they have now produced all documents requested in

_____

[2] In his Motion to Compel, Plaintiff only addresses Federal
Defendants' alleged failure to produce documents sought in the
Fourth Discovery Request.  Plaintiff addresses the alleged
inadequacy of Federal Defendants' responses to his Request for
Admissions in other motions.

Plaintiff's Fourth Discovery Request "pertaining to legitimate issues remaining in the case, where the request is not overly broad or burdensome."  In addition, Federal Defendants assert Plaintiff waived any objection to the timeliness or manner of the original response by agreeing to extend the time for Federal Defendants to supplement their response to Plaintiff's Fourth Discovery Request until April 4, 2005.  The Court granted the Motion to Extend Time that was agreed to by the parties.  *See* Order (issued Mar. 21, 2005).

Notwithstanding the Court's Order allowing the extension of time, Plaintiff filed this Motion to Compel on March 28, 2005, before the expiration of the time allowed for Federal Defendants to supplement their responses to Plaintiff's Fourth Discovery Request.  On March 31, 2005, Federal Defendants served Plaintiff with their "Objections to Plaintiff's Fourth and Fifth Discovery Requests."  According to Federal Defendants, they also provided Plaintiff with all documents they consider to be relevant to the issues still pending in this case.  In their response to Plaintiff's Motion to Compel, Federal Defendants identify those categories of documents produced and their reasons for not producing other documents.

Plaintiff's Motion to Compel filed on March 25, 2005, is premised on the allegation that, as of that date, Plaintiff had "not received one scrap of paper or one answer to an

interrogatory [*i.e.,* Request for Admission], in formal discovery from the federal government."  As of March 25, 2005, however, Plaintiff did not have any reason to expect Federal Defendants to have produced the documents Plaintiff requested in light of the Court's March 21, 2005, Order granting Federal Defendants until April 4, 2005, to respond to Plaintiff's requests.

 On this record, the Court finds Plaintiff has failed to establish that he is entitled to an order compelling production of the documents he seeks in his Fourth Discovery Request.

Accordingly, the Court **DENIES** Plaintiff's Motion to Compel.

II.  **Federal Defendants' Motions**.

A.  **Motion to Strike Plaintiff's Tenth Affidavit (#431)**.

Plaintiff filed his Tenth Affidavit in support of his Motions for Partial Summary Judgment and in opposition to the Motions for Summary Judgment filed by Federal Defendants, the Port, and the City.  Plaintiff's Tenth Affidavit contains all of the Requests for Admissions included in Plaintiff's Fourth Discovery Request.  Plaintiff asserts Federal Defendants' failure to respond to the Requests in a timely manner constitutes a waiver of any objection by Federal Defendants, and, therefore, Federal Defendants are deemed to have admitted the facts set forth in the Requests for Admissions.

As noted, Plaintiff agreed to Federal Defendants' having an extension of time to April 4, 2005, to respond to Plaintiff's

Fourth Discovery Request, and the Court granted the extension on March 21, 2005. Accordingly, the Court finds Federal Defendants timely responded to Plaintiff's Fourth Discovery Request by delivering their response to Plaintiff before April 4, 2005.

In addition, Federal Defendants specifically stated their objections in their response to each of Plaintiff's Requests for Admissions. The Court, therefore, also finds Federal Defendants complied sufficiently with LR 36.2, which requires that "[e]very response, denial, or objection [to a Request for Admission] must set forth each request in full, followed by the admission, denial, or objection [and] [e]ach objection must be followed by a statement of reasons."

On this record, the Court concludes Federal Defendants are not deemed to have admitted the facts stated by Plaintiff in his Request for Admissions set forth in his Fourth Discovery Request.

Accordingly, the Court **GRANTS** Federal Defendants' Motion to Strike Plaintiff's Tenth Affidavit.

### B.  Motion to Strike Plaintiff's Thirteenth Affidavit (#477).

On March 1, 2005, Plaintiff sent Federal Defendants a "Fifth Discovery Request" with 102 Requests for Admission including subparts. Plaintiff asserts Federal Defendants failed to respond within the time allowed. In his Thirteenth Affidavit, Plaintiff sets forth the Requests for Admission as admitted facts by

Federal Defendants in the same manner as in Plaintiff's Tenth Affidavit.

Plaintiff's Fifth Discovery Request was subject to the same agreement and Court Order permitting Federal Defendants' to have an extension of time to April 4, 2005, to respond to Plaintiff's Fourth Discovery Request. The Court, therefore, concludes Federal Defendants are not deemed to have admitted the facts stated by Plaintiff in his Request for Admissions set forth in his Fifth Discovery Request.

Accordingly, the Court **GRANTS** Federal Defendants' Motion to Strike Plaintiff's Thirteenth Affidavit.

## III. <u>Port's Motion</u>.

The Port filed a separate Motion (#457) requesting leave of court to join Federal Defendants in their Motion to Strike Plaintiff's Tenth Affidavit.

The Court **GRANTS** the Port's Motion.


<u>SUMMARY JUDGMENT MOTIONS</u>

<u>Factual Background</u>

Plaintiff seeks a declaration that the Corps, the EPA, the Port, the City, PGE, and the State of Oregon, among others, have unlawfully disposed of dredged spoils and placed fill on the wetlands of WHI and in the navigable waters of the United States

surrounding WHI in violation of the CWA.  Plaintiff also seeks
injunctive relief requiring each Defendant to repair or to remedy
the damage they allegedly have done to the wetlands as a result
of their unlawful conduct.

No genuine issue of material fact exists as to the
following:

The Corps began dredging the Columbia River in 1877 to
create a navigation channel, and the Corps and the Port have
periodically dredged the river to maintain and/or to expand that
channel.

Before 1994 PGE owned a substantial portion of WHI.  The
Corps issued Permit 7240 on June 11, 1987, and Permit 5254 on
August 2, 1989, to PGE for the placement of fill and dredge
materials on WHI to develop the land for industrial use.

The Port purchased most of WHI in 1994 to use for marine
cargo terminals.  During the planning process in 1995, the Port
identified and the Corps approved the designation of 30.9 acres
of WHI as wetland areas (the "Halloween Delineation").  The Port
revised its estimate of the wetlands areas on WHI in 1997, and
the Corps approved the expansion of designated wetlands to 49.2
acres (the "Halloween II" delineation) in 1998.

On July 21, 1998, the Corps issued Permit 97-1482 to the
Port for the construction of an outfall pipeline across WHI.

## Standards

### I.  **Summary Judgment**.

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense

determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## II. **Judicial Review under the APA.**

Section 706 of the APA directs a court that is evaluating an agency action to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The court's review must "be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Because the court's review is confined to the administrative record that existed at the time of the agency's decision, it may not include "some new record made initially in the reviewing court." *Ctr. for Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992)(citing *Camp v. Pitts*, 411 U.S. 138 (1973)). "To ensure fair review of an agency action, therefore, the court 'should have before it neither more nor less information than did the agency when it made its decision.'" *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997)(internal citation omitted). The record, therefore, must include all

18 - OPINION AND ORDER

documents and materials that the agency "'directly or indirectly considered'" at the time it made its decision. *Fund for Animals v. Williams,* 245 F. Supp. 2d 49, 55 (D.C. Cir. 2003). *See also Thompson v. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Water Land Exchange Project v. Dombeck*, 47 F. Supp. 2d 1196, 1205 (D. Or. 1999).

"The agency may not skew the record in its favor by excluding pertinent but unfavorable information.  Nor may the agency exclude information on the grounds that it did not rely on the excluded information in its final decision.  On the other hand, an agency may exclude arguably relevant information that is not contained in the agency's files but that may be available from third parties.  In addition, an agency generally may exclude material that reflects internal deliberations." *Fund for Animals*, 245 F. Supp. 2d at 55.

Although an agency may not unilaterally determine what constitutes the administrative record, "the agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary." *Id.  See also Bar MK Ranches v. Yeutter*, 994 F.2d 735, 739-40 (10th Cir. 1993) (the administrative record enjoys the same presumption of regularity afforded to other established administrative procedures); *Amfac Resorts v. United States Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.C. Cir. 2001) (court noted the "standard presumption"

that the agency properly designated the Administrative record.").

Under the APA, an agency action must be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See also Friends of the Earth v. Hintz*, 800 F.2d 822, 830-31 (9th Cir. 1986). The court determines whether a final agency action is arbitrary and capricious by evaluating whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001). The court is not empowered to substitute its judgment for that of the agency. As long as the agency decision is based on the relevant factors and there is no clear error of judgment, the reviewing court may not overturn the agency's action as arbitrary and capricious. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989). *See also Ariz. v. Thomas*, 824 F.2d 745, 748 (9th Cir. 1987).

Agency action should be overturned only when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the

product of agency expertise." *Motor Vehicle Mfr. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Deference to an agency's technical expertise and experience is particularly warranted with respect to questions involving . . . scientific matter." *United States v. Alpine Land and Reservoir Co.*, 887 F.2d 207, 213 (9th Cir. 1989), *cert. denied,* 498 U.S. 817 (1990). Nevertheless, the "presumption of agency expertise may be rebutted if the decisions, even though based on scientific expertise, are not reasoned." *Greenpeace v. NMFS,* 80 F. Supp. 2d 1137, 1147 (W.D. Wash. 2000).

## Discussion

I.  **Federal Defendants' Motions**.

    A.  **Motion for Summary Judgment (#466) as to Plaintiff's Claims against the EPA.**

Plaintiff contends the Corps violated §§ 301(a) and 401(a) of the CWA by failing to obtain certifications from permittees to place dredge and fill material on WHI. *See* 33 U.S.C. §§ 1311(a) and 1341(a). As an adjunct to that claim, Plaintiff alleges the EPA abdicated its responsibility to enforce the CWA and to limit or to prohibit the unlawful filling of waters that are subject to the CWA. A critical issue in determining the EPA's legal obligations related to Plaintiff's claims is whether the reach of the CWA extends to the Ordinary High Water Line or the High Tide Line at WHI.

Plaintiff repeatedly has argued the Columbia River is a tidal river at WHI, and, as a result, the placement of fill and dredge materials in those areas of WHI where the waters extend to the High Tide Line are subject to the CWA. Plaintiff also asserts, as he previously did before Judge Jones, that the EPA abdicated its responsibility to enforce the requirements of the CWA when it did not prevent the Corps from allowing dredge spoils and fill to be placed in areas of WHI that are within the High Tide Line and, therefore, within the waters of the United States without first requiring § 404 permits in compliance with the CWA. According to Plaintiff, therefore, the EPA is liable under the APA and CWA for allowing the Corps to exercise authority it did not have when it permitted the placement of dredge and fill in those areas of WHI within the High Tide Line.

The foundation for Plaintiff's claims against the EPA is that the Corps erred when it determined the Columbia River at WHI is nontidal. As noted, however, Judge Jones found the Corps did not act arbitrarily and capriciously when it made that determination. Accordingly, Judge Jones concluded the CWA applies only to activities in those areas of WHI that extend to the Ordinary High Water Line rather than to the High Tide Line. *See* Opin. and Order at 11 (issued Aug. 11, 2003).

In what appears to be an effort to circumscribe Judge

Jones's decision, Plaintiff argues his § 505(a)(2) CWA claim[3]
against the EPA is based on the theory that the Corps wrongfully
determined the Columbia River was nontidal from the Bonneville
Dam to the mouth of the river. Plaintiff asserts the Corps's
determination reflects its "general policy" to adopt the Ordinary
High Water Line as the jurisdictional limit of United States
waters for the Columbia River as a whole. In addition, Plaintiff
contends the EPA abdicated its mandatory duty under the CWA to
challenge the implementation of the Corps's general policy.

To support his position, Plaintiff points out Judge Jones
previously denied Federal Defendants' Motion for Judgment on the
Pleadings as to Plaintiff's § 505(a)(2) claim. In fact, however,
Judge Jones initially declined to dismiss Plaintiff's § 505(a)(2)
claim against the EPA only because of the "heavily fact-intensive
nature of this case, along with the fact that plaintiff is
proceeding *pro se*." *See* Opin. and Order at 14 (issued Apr. 5,
2002).

On August, 11, 2003, sixteen months later, Judge Jones
granted summary judgment to Federal Defendants as to Plaintiff's
claim that the Corps acted unlawfully when it determined the
reach of the CWA extended to the Ordinary High Water Mark at WHI.

---

[3] Section 505(a)(2) of the CWA permits a citizen suit
against the Administrator of the EPA for failing to perform
"nondiscretionary acts." 33 U.S.C. § 1365(a)(2).

On March 5, 2004, Judge Jones also concluded Plaintiff's assertion that the Columbia River from the Bonneville Dam to Astoria is tidal was far broader than the scope of this case as set forth in Plaintiff's Complaint. Judge Jones, therefore, did not consider whether the Columbia River might be tidal in certain places other than WHI because the "focus of this litigation is WHI." Accordingly, Judge Jones dismissed Plaintiff's CWA claim against the EPA because the claim relied on Plaintiff's incorrect view that the reach of the CWA extended to the High Tide Line rather than the Ordinary High Water Line at WHI. *See* Opin. and Order at 7-9.

As noted, this Court will not reconsider Judge Jones's rulings, including his decision that the Ordinary High Water Line defines the reach of the CWA at WHI or his determination that the Corps's alleged general policy regarding the reach of the CWA in other stretches of the Columbia River is beyond the scope of this litigation.

In summary, the Court concludes Judge Jones's decision that the Ordinary High Water Line accurately delineates the reach of the CWA at WHI is dispositive of Plaintiff's claims against the EPA. Accordingly, the Court grants summary judgment in favor of Federal Defendants as to Plaintiff's claims against the EPA.

**B. Motion for Summary Judgment (#469) as to Plaintiff's Claim Against Federal Defendants Based on the**

**Corps's Alleged Nondisclosure of Information in
Violation of § 404(o) of the CWA.**

Plaintiff asserts a claim under the APA that Federal

Defendants violated § 404(o) of the CWA, 33 U.S.C. § 1344(o),

when the Corps "withheld information and concealed the true

nature of permit actions on [WHI].  This is a result of ongoing

violations of CWA 404(o)."  Section 404(o) of the CWA provides:

> A copy of each permit application and each
> permit issued under this section shall be
> available to the public.  Such permit
> application or portion thereof, shall further
> be available on request for the purpose of
> reproduction.

Plaintiff also asserts the admissions set forth in his Tenth

and Thirteenth Affidavits establish Federal Defendants failed to

maintain records of permits and permit applications in the manner

required by § 404(o).  Finally, Plaintiff asserts he requested a

copy of Permit 5254, but the Court refused to compel Federal

Defendants to produce it.[4]  Based on this "evidence," Plaintiff

asserts the burden shifted to Federal Defendants to produce

---

[4] In his Motion to Compel, Plaintiff sought an order
requiring Federal Defendants, *inter alia,* to "rename" the
Administrative Record and to add permits and environmental impact
statements that were not already part of the record.

The Court denied Plaintiff's Motion because judicial
review under the APA is limited to the administrative record as
it existed when the final action was taken.  *See Haynes v. United
States,* 891 F.2d 235, 238 (9th Cir. 1989)("The administrative
record consists of those materials in the agency record *at the
time the [agency] decision was made.*")(emphasis in original).
*See* Opin. and Order at 6-7 (issued Sept. 17, 2004).

evidence that they complied with § 404(o).

Federal Defendants first contend the alleged withholding of information by the Corps is not a "final agency action" that is subject to judicial review under the APA. In addition, Federal Defendants assert Plaintiff, in seeking a remedy for such an alleged violation, should have submitted a Freedom of Information Act request or moved to compel production of the documents if Federal Defendants refused to produce them after an appropriate request.

The Court agrees with the Federal Defendants that the Corps's alleged withholding of information under § 404(o) of the CWA is not a final agency action that is subject to review under the APA because it does not represent the consummation of the agency's decision-making process. *See* 5 U.S.C. § 704. Moreover, as noted, the Court's review of any final agency action is limited to the administrative record that existed at the time the action was taken.

Accordingly, on this record, the Court grants Federal Defendants summary judgment as to Plaintiff's claim against Federal Defendants based on the Corps's alleged nondisclosure of information in violation of § 404(o) of the CWA.

**C.  Motion for Summary Judgment (#474) as to Plaintiff's Claim Regarding the Corps's Determination of the**

**Jurisdictional Boundary of United States Waters at WHI.**

As part of his first claim, Plaintiff continues to allege Federal Defendants authorized and permitted the disposal of dredge and fill material in United States waters in an area below the Ordinary High Water Line at WHI. Plaintiff's claim is premised on his repeated assertion that the High Tide Line rather than the Ordinary High Water Line should properly delineate the jurisdictional boundary of United States waters at WHI.

As noted, Judge Jones upheld the Corps's determination that the Ordinary High Water Line delineates the jurisdictional boundary of United States waters at WHI. *See* Opin. and Order at 11 (issued Aug. 11, 2003). Accordingly, the Court grants Federal Defendants summary judgment as to this part of Plaintiff's claim.

**D. Motion for Summary Judgment (#479) as to Plaintiff's Claim Regarding the 2002 Channel Deepening Environmental Impact Statement (2002CDEIS).**

Plaintiff asserts Federal Defendants violated NEPA when the Corps issued the 2002CDEIS without adequately considering the cumulative effects of previous dredging and fill activities in and around WHI.

As noted, Plaintiff filed his Complaint in December 2000 before the Corps issued the 2002CDEIS. Plaintiff, therefore, did not include any alleged defects in the 2002CDEIS in his Complaint. In fact, Plaintiff's claim regarding the 2002CDEIS appeared for the first time in the "October 15, 2004, Plaintiff's Statement of

Remaining Claims," ¶ II.3, after the Court ordered the parties to identify claims still to be resolved.

Federal Defendants now move for summary judgment on the ground that the 2002CDEIS was not consummated as a final agency action before Plaintiff filed his Complaint, and, therefore, the 2002CDEIS is not subject to judicial review under the APA in this case. The Court agrees and, accordingly, grants Federal Defendants summary judgment as to Plaintiff's claim against Federal Defendants regarding the 2002CDEIS.

Because Plaintiff is *pro se* and the issues in this action are complex, however, the Court *sua sponte* exercises it discretion to allow Plaintiff to file a motion for leave to amend his Complaint no later than September 22, 2005, for the sole purpose of adding a claim that the 2002CDEIS violates NEPA. If Plaintiff chooses to file such a motion, he must confer with the opposing parties to comply with Local Rule 7.1. Federal Defendants' response to the Motion to Amend shall be filed no later than October 3, 2005. No reply is permitted. Memoranda in support of and in opposition to the motion shall be limited to ten (10) pages.

If Plaintiff files a motion for leave to amend his Complaint and the Court grants the motion, the Court will grant Federal Defendants leave to file a dispositive motion against Plaintiff's 2002CDEIS claim.

**E. Motion for Partial Summary Judgment (#481) as to**

**Plaintiff's Claim Against Federal Defendants Regarding the Validity of Permit 97-1482.**

Plaintiff seeks judicial review under the APA of the Corps's issuance of Permit 97-1482 to the City for construction of a Wet Weather Treatment Facility Outfall Project, which involved the installation of a pipeline running south to north across WHI from the Oregon Slough to the Columbia River.

Plaintiff alleges the Corps modified the City's original permit application to allow filling of wetlands in the vicinity of the project as well as mitigation of the filling without providing any notice to the public and thereby precluded any opportunity for the public to comment on the modification as required by § 404(a) of the CWA, 33 U.S.C. § 1344(a).

In addition, Plaintiff asserts the Corps issued Permit 97-1482 even though it knew the delineation of the wetlands on WHI was flawed.

Federal Defendants move for summary judgment on the ground that the Corps properly issued Permit 97-1482 as reflected in the Administrative Record (AR) before the Court. Federal Defendants also seek summary judgment on Plaintiff's claim that Permit 97-1482 was renewed without the issuance of a § 401 certification. *See* 33 U.S.C. § 1341.

    1.  <u>Facts Relevant to the Issuance of Permit 97-1482</u>.

The following facts are based on the AR:

On November 3, 1997, the City submitted its original permit application to the Corps.  In its application, the City stated the project would include excavation and fill of a trench 2,300 feet long, 10-20 feet deep, and of variable width.  AR Ex. 27 at 164.  The construction of the trench would require the excavation of 147,000 cubic yards of sand and silt below the high-water elevation of the Oregon Slough and the Columbia River.  AR Ex. 27 at 164.  On November 21, 1997, the Corps issued a public notice inviting comments on the project.  The notice identified "wetlands" generally as one of the factors that "may be relevant" to the decision whether to issue the permit.  AR Ex. 25 at 140. The public-comment period expired on December 22, 1997.

On December 4, 1997, during a site visit by officials representing Federal Defendants, the State of Oregon, and the City, Project Manager Judy Linton noted the project "supposedly can avoid wetland including construction activities."  A representative from the Oregon State Department of State Lands, however, "suggest[ed] looking at reality of impacting the wetland in the middle of [WHI] - probably can not be avoided - should plan to mitigate."  AR Ex. 24 at 136.

After the time allowed for public comment expired, an environmental consultant for the City responded to comments on the project by both federal and state officials.  In response to a recommendation from an official from the Oregon Department of Fish

and Wildlife (ODFW) that the proposed pipeline be contoured away from wetlands, the consultant stated:

> On our December 4 field trip, I mentioned that the pipe alignment could potentially be bent towards the existing pipe to avoid the subject wetland.  Given the space constraints at this location, Jerry suggested that the City may be better off assuming some (unavoidable) wetland impact and providing mitigation instead.  After further review, project engineers agree that it will be extremely difficult to avoid *all* wetland impacts even if the pipeline is bent.  They believe that up to 2800 square feet of fill may be needed (3400 sq. ft. total construction impact area), in part to respond to . . . [ODFW's] request regarding fill side slopes.

AR Ex. 22 at 100 (emphasis in original).

Further discussion occurred thereafter between the Corps and the EPA regarding the proposed change in the project to allow fill onto the affected wetlands.  AR Ex. 15 at 86, Ex. 17 at 88, Ex. 21 at 99.  The discussion, however, was limited to the availability of mitigation credits from a previous activity that could be applied to the project.  AR Ex. 15 at 86, Ex. 17 at 88, Ex. 21 at 99.  EPA approved the trade-off of mitigation credits.  AR Ex. 15.

On March 26, 1998, the Oregon Department of Environmental Quality issued a certificate as required by § 401(a)(1) of the CWA, 33 U.S.C. § 1341(a)(1), in which it certified the project complied with the CWA and state water standards.  AR Ex. 5 at 35.

On July 21, 1998, the Corps issued Permit 97-1482 to the

City.  The Corps issued the Permit without affording the public
any opportunity to comment on the change in the project that
allowed fill on 2,800 sq. ft. (.065 acres) of wetlands located in
the area of the project.

      2.  <u>Scope of Review</u>.

      As a preliminary matter, Plaintiff argues the validity
of Permit 97-1482 should not be determined solely on the basis of
a review of the AR that existed when the Corps issued the Permit.
Plaintiff asserts Federal Defendants improperly seek an "advantage
to have the decision seem to be . . . [based on a review of the
AR] in which deference is owed to the Corps."  Thus, in addressing
the validity of the Permit, Plaintiff relies in part on evidence
outside of the AR, including the alleged "admissions" of Federal
Defendants set forth in Plaintiff's Tenth and Thirteenth
Affidavits.

      As noted, judicial review of a "final agency action"
under the APA is limited to the administrative record in existence
when the action was taken.  *Citizens to Pres. Overton Park, Inc.*,
401 U.S. at 420.  The Supreme Court has applied a two-part
analysis to determine whether an agency action is final pursuant
to the APA:  (1) The action must mark the "consummation" of the
agency's decision-making process and may not be merely tentative
or interlocutory and (2) the action must be one "by which rights
or obligations have been determined" or "from which legal

consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177
(1997).

Here the Corps's issuance of Permit 97-1482 ended the
decision-making process and allowed the project to proceed.
Moreover, the Permit set the conditions for the project and
determined the legal rights and obligations of the City as to the
project. Accordingly, the issuance of the Permit was a final
agency action. The Court's determination of the validity of
Permit 97-1482, therefore, must be based solely on the contents of
the AR in existence on July 21, 1998, when the Corps issued the
Permit. In any event, the Court notes it has previously stricken
the extra-record affidavits relied on by Plaintiff to challenge
the issuance of the Permit.

3. Deference Owed to Agency.

The Court agrees with Plaintiff that Federal Defendants
are not entitled to deference as to their opinion of the adequacy
of the notice-and-comment procedure used when the Corps issued
Permit 97-1482. *See Natural Res. Def. Council v. Envtl. Prot.
Agency,* 279 F.3d 1180, 1886 (9th Cir. 2002)(*NRDC v. EPA*)("[W]e
determine in the first instance the adequacy of the agency's
notice and comment procedure, without deferring to an agency's own
opinion of the adequacy of the notice and comment opportunities it
provided.").

4. <u>Contents of the Public Notice</u>.

The Corps has promulgated regulations setting out the information that must be published in a public notice before the issuance of a permit authorizing the discharge of dredge or fill material in the waters of the United States. *See* 33 C.F.R. § 325.3. Public notice serves as

> the primary method of advising all interested parties of the proposed activity for which a permit is sought and of soliciting comments and information necessary to evaluate the probable impact on the public interest. *The notice must, therefore, include sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment.*

33 C.F.R. § 325.3(a)(emphasis added). The notice is required to include "information which may assist interested parties in evaluating the likely impact of the proposed activity, if any, on factors affecting the public interest." 33 C.F.R. § 325.3(a)13. Those factors include the "cumulative impact of general permits" on "wetlands." 33 C.F.R. § 325.3(b) and (c)(1).

In *NRDC v. EPA,* the Ninth Circuit set out the elements that must be included in an EPA notice pursuant to § 301(b)(1)(C) of the CWA, 33 U.S.C. § 1311(b)(1)(C), to give effective notice to the public before the issuance of a National Pollutant Discharge Elimination System (NPDES) permit:

> Under the Administrative Procedure Act, the EPA must provide the public with notice and an opportunity to comment before it issues NPDES

permits.  5 U.S.C. § 553(b)-(c); 40 C.F.R. §§
124.6(d), 124.10(a)(1)(ii).  Like other
agencies, the EPA "must provide notice
sufficient to fairly apprise interested
persons of the subjects and issues before the
Agency."

Of course, the final permit issued by the
agency need not be identical to the draft
permit.  That would be antithetical to the
whole concept of notice and comment.  Indeed,
it is "the expectation that the final rules
will be somewhat different and improved from
the rules originally proposed by the agency."
Thus, "[t]he law does not require that every
alteration in a proposed rule be reissued for
notice and comment."

However, "a final rule which departs from a
proposed rule must be a logical outgrowth
of the proposed rule. . . .  The essential
inquiry focuses on whether interested parties
reasonably could have anticipated the final
rulemaking from the draft permit."  In deter-
mining this, one of the salient questions is
"whether a new round of notice and comment
would provide the first opportunity for
interested parties to offer comments that
could persuade the agency to modify its rule."
*The "relevant inquiry is whether or not
potential commentators would have known that
an issue in which they were interested was 'on
the table.'"*

279 F.3d at 1186 (internal citations omitted; emphasis added).

To save time and money and to "prevent possible

confusion," the Corps recommends in its Standard Operating

Procedures that district engineers should not issue an additional

public notice "[i]f project impacts are similar to, or less than

the original submittal."  *See Army Corps of Engineers Standard*

*Operating Procedures for the Regulatory Program* § 9.

Here the public notice for Permit 97-1482 generally included, *inter alia,* "wetlands" as to be evaluated before the Permit would be issued.  The notice, however, did not reflect fill would be placed on any specific WHI wetlands.

5.  Adequacy of Notice.

Even though the final Permit 97-1482 is not identical to the draft permit, Federal Defendants assert the final Permit did not require a supplemental notice or an opportunity for additional public comment because the change was "modest" and it was "clear from the administrative record that the Corps and several resource agencies considered alternatives to the wetland impact, and determined that the filling of 288 (*sic*) square feet,[5] with application of mitigation credits, was the best course."  Fed. Defs.' Mem. at 15.  In addition, Federal Defendants assert "[a]n interested person reviewing the public notice would be aware of the potential for some impact on the wetlands illustrated on the map."  Finally, Federal Defendants rely on *Fund for Animals v. Rice,* 85 F.3d 535, 545 (11th Cir. 1996), to support their position.

In *Fund for Animals*, the court held the modification of a road-building permit did not require a supplemental notice-and-comment period because the minor modification added only .47 acres of wetland to the 120 acres of wetland that were identified as

_____

[5] The final Permit authorized the filling of 2,800 square feet of wetlands.

being affected by the construction in the original public notice. *Fund for Animals* is distinguishable, however, from the circumstances of this case.

In *Fund for Animals*, the Corps's public notice identified 640 acres of wetland that would be impacted by the road construction that was the subject of the permit. Subsequent information led to a minor modification to that total and did not constitute a substantial change of circumstances. In contrast, Permit 97-1482 originally did not identify any specific wetlands that would be affected by the project. This Court concludes a

modification to a permit application that includes impacts to wetlands when no impacts were previously identified constitutes a substantial change of circumstances. In fact, the modification in the final Permit here, which creates an impact where none previously existed, does not meet the Corps's own criteria for obviating the need for an additional round of public comment: No public comment is required when changes in a proposal are "similar to" or "less than" the original proposal.

As to the Corps's other justifications for not providing the public with an opportunity to comment on the modification to the final Permit, the Court notes the AR does not reflect any discussion of the extent or the nature of the possible impact on wetlands as a result of the newly proposed fill activity or

reasons given as to why the proposed trade of "mitigation credits" would be the "best course." In addition, Federal Defendants do not satisfactorily explain how an "interested person," such as a member of the public, would be able to determine that there would be substantial impacts on wetlands based on a map attached to the public notice when the Corps, which issued the notice, did not identify such impacts until the matter apparently was raised by state officials during a site visit that occurred after the original notice was issued.

In summary, the Court has reviewed the record and is not persuaded by Federal Defendants' argument that an additional notice-and-public-comment period was not required before the issuance of Permit 97-1482 because the modification had a direct impact on wetlands that was not contemplated in the original public notice. The Court, therefore, concludes this record supports an inference that Federal Defendants acted arbitrarily and capriciously when they failed to supplement the public notice and to extend the period for comment to allow the public an opportunity to be heard on the modified permit application.

Accordingly, the Court denies Federal Defendants' Motion for Partial Summary Judgment on Plaintiff's claim against the validity of Permit 97-1482. In light of the Court's ruling on the validity of Permit 97-1482, the Court need not address the second part of Federal Defendants' Motion regarding Plaintiff's claim as to

Federal Defendants' alleged unlawful renewal of Permit 97-1482 without a § 401 certification.

**F. Motion for Summary Judgment (#487) on Plaintiff's NEPA Claims Regarding the 1998 Supplemental Environmental Impact Statement (1998SEIS).**

Plaintiff alleges Federal Defendants generally violated NEPA by failing to produce adequate environmental impact statements regarding the disposal of dredge spoil on or around WHI. Specifically, Plaintiff alleges Federal Defendants' 1998SEIS failed to "adequately address the effects" of the disposal "in the floodway, floodplain, or areas adjacent to the floodplain" of dredge spoils from the Federal Defendants' operational and maintenance dredging activities on or around WHI.

Federal Defendants move for summary judgment on the ground that Plaintiff has failed to allege (1) an injury-in-fact that gives Plaintiff standing to assert a claim regarding the 1998SEIS or (2) a specific agency action or decision based on the 1998SEIS (*i.e.*, a final agency action that is ripe for judicial review under the APA). Thus, instead of asserting they are entitled to a judgment based on a record of undisputed facts, Federal Defendants are attacking the sufficiency of Plaintiff's Complaint as to Plaintiff's NEPA claims regarding the 1998SEIS.

Federal Defendants rely on *Laub v. Department of Interior,* 342 F.3d 1080 (9th Cir. 2003), to support their position. The Court, however, concludes Federal Defendants' reliance on *Laub* is

misplaced.

In *Laub,* the Ninth Circuit reversed the district court's ruling that the plaintiff lacked standing to assert a claim based on a procedural violation of NEPA in the absence of an allegation of a specific injury arising from a specific decision or action:

> The Federal Defendants assert that Plaintiffs are unable to show they will like suffer immediate injury or identify "specific tangible actions that will immediately be taken under the [EIS] . . . that will cause damage to them." This, they argue, indicates that Plaintiffs are unable to establish injury in fact. *Yet when, as here, a procedural violation is the injury alleged, the requirements of immediacy of the threatened harm are relaxed. Thus the fact that Plaintiffs cannot show immediate harmful action will be taken based on the allegedly defective EIS is not fatal to establish standing.*

342 F.3d at 1087 (internal citations omitted; emphasis added). The court also held the EIS was ripe for review under the APA even in the absence of a final agency action:

> The district court determined Plaintiffs failed to meet the ripeness requirement embodied in the first prong of the APA test for prudential standing–that the challenged action be a final agency action. . . . The district court determined that "[a]ny future site-specific federal actions, if they significantly effect the environment, will have then to comply with NEPA." Plaintiffs counter that the question of whether an agency has complied with NEPA's procedural requirements in formulating a programmatic EIS is immediately ripe for review before any site-specific action is taken. We agree.

*Id.* at 1088 (internal citations omitted). The court then distinguished between allegations of procedural and substantive NEPA violations and held the former, unlike the latter, do not require site-specific actions as a predicate to judicial review. *Id.* at 1090-91.

Because "the *pro se* litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel," the court must construe the *pro se* complaint liberally. *United States v. Seesing*, 234 F.3d 456 (9th Cir. 2000)(quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). Although Plaintiff's Complaint in this matter is lengthy and at times confusing, the Court finds Plaintiff alleges facts that could be construed to support both procedural and substantive violations of NEPA and, therefore, facts that may be sufficient to defeat Federal Defendants' summary judgment motion.[6]

------------------------

[6] In their Motion, Federal Defendants requested the Court, in the alternative, to stay Plaintiff's claim regarding the 1998SEIS because summary judgment motions had been filed in the District Court for the Western District of Washington that raise the issue of the adequacy of the 1998SEIS in regard to two specific decisions made by the Federal Defendants: the November 1998 Record of Decision (ROD) regarding channel maintenance for the Columbia River and the January 2004 ROD regarding channel deepening. *See Northwest Envtl Advocates v. Nat'l Marine Fisheries,* CV 04-0666 (W.D. Wa.)(*NEA v. NMFS*). Federal Defendants asserted a stay is appropriate to avoid a potential "conflicting judgment" on the 1998SEIS.

After Federal Defendants filed their Motion in this matter, the court in *NEA v. NMFS* issued an opinion and order granting the cross-motion for summary judgment filed by NMFS.

Accordingly, the Court denies Federal Defendants' Motion for Summary Judgment as to Plaintiff's NEPA claims regarding the 1998SEIS.

**II.  City Defendants' Motions**.

**A.  Motion for Partial Summary Judgment (#395) as to Plaintiff's Failure to Satisfy the CWA 60-Day Notice Requirement.**

City Defendants move for partial summary judgment against Plaintiff as to three of Plaintiff's remaining CWA claims on the ground that Plaintiff failed to give City Defendants the 60-day notice required by the CWA as to Plaintiff's intent to assert these claims before Plaintiff filed this action.  Plaintiff's three CWA claims are:  (1) The City unlawfully filled a wetland in an area adjacent to Canoe Bay while doing work specified in Permit 97-1482, (2) the City unlawfully disposed of demolition debris from the Rose Garden in Portland's Washington Park into United States waters in the vicinity of Portland International Raceway (PIR), and (3) the City unlawfully filled areas in United States waters on WHI in 1995 and eventually constructed a chlorine-removal building on part of the filled area.

1.  Sixty-Day Notice Requirement.

Under the CWA, a private citizen is entitled to bring an

_See_ Mem. Order (issued June 15, 2005).  This Court has carefully reviewed that decision and concludes it has no bearing on Plaintiff's 1998SEIS claim in this case.

action against any person "alleged to be in violation of

an effluent standard or limitation." 33 U.S.C. § 1365(a)(1). No

such action may be commenced "prior to sixty days after the

plaintiff has given notice of the alleged violation" to the

"alleged violator." 33 U.S.C. § 1365(b)(1)(A). The CWA does

not describe the content of the required notice, but directs

that "[n]otice . . . shall be given in such a manner as the

Administrator [of the EPA] shall prescribe by regulation."

33 U.S.C. § 1365(b).

> The EPA has mandated the notice shall include
> sufficient information to permit the recipient
> to identify the specific standard, limitation,
> or order alleged to constitute a violation,
> the person or persons responsible for the
> alleged violation, the location of the
> alleged violation, the date or dates of such
> violation, and the full name, address, and
> telephone number of the person giving notice.

40 C.F.R. § 135.12(a). Compliance with the notice requirement is

a prerequisite to the federal court having subject matter

jurisdiction. *Hallstrom v. Tillamook County,* 493 U.S. 20, 26

(1989). Courts, therefore, have "strictly construed" the 60-day

notice requirement. *Community Ass'n for Restoration of the Env't*

*v. Henry Bosma Dairy* (*Bosma*), 305 F.3d 943, 950 (9th Cir. 2002).

In *Bosma,* the court stated:

> The purpose of the 60 day notice is to provide
> the agencies and the defendant with
> information on the cause and type of
> environmental laws or orders the defendant is
> allegedly violating so that the agencies can

> step in, investigate, and bring the defendant
> into compliance.  The point is to trigger
> agency enforcement and avoid a lawsuit.

*Id.* at 953.  The notice, therefore, must enable the agency to

identify the source and the nature of the alleged violations.

    2.  <u>Plaintiff's Notice</u>.

    More than 60 days before he commenced this action,

Plaintiff sent notice to the City of alleged CWA violations

regarding fill activities on WHI.  Although Plaintiff's Notice was

dated January 4, 1999, it was actually written on January 4, 2000,

and received by Federal Defendants on January 11, 2000.

Plaintiff's Complaint was filed on December 29, 2000.  Plaintiff

alleged in the notice that:

> The City has disposed of dredge spoils and
> fill into the Waters of the United States in
> the area generally called West Hayden Island
> without a valid permit, an unlawful act under
> 33 U.S.C. § 1311(a).  The illegal fill is on
> section 28 and 29, township 2, north range 1
> east, Willamette meridian, Multnomah County.
>
> These Waters of the United States, filled
> without a valid CWA permit from June, 1999,
> and continuing to the present day, correspond
> to the Corps of Engineers (COE) Project ID
> #97-214, as expanded.

City Defendant's Summ. J. Mot., Ott Decl. Ex. 4.

    3.  <u>Adequacy of Notice</u>.

    In his 60-day Notice, Plaintiff objects generally to

filling of land on WHI authorized under Permit 97-1982 that

resulted in the construction of a road across WHI.   Plaintiff

argues his 60-day Notice alleges a certain type of continuing violation: *i.e.,* the illegal placement of fill on or in the vicinity of WHI that constitutes his three specific CWA claims.

City Defendants, however, assert none of Plaintiff's three CWA claims is adequately described in Plaintiff's 60-day Notice as to place, time, or nature of the violation.

The Court agrees with City Defendants that Plaintiff's 60-day Notice is neither broad enough nor specific enough to cover all of Plaintiff's allegations of fill violations.  Plaintiff's Notice is limited by its express terms to fill associated with road construction that was begun in 1997 after the issuance of Permit 97-1482.  The issue, therefore, is whether Plaintiff's three CWA claims challenged by City Defendants are associated with the road construction that began in 1997.

a.  Plaintiff's First CWA Claim:  In 1995 the City unlawfully filled areas in United States waters on WHI and eventually constructed a chlorine-removal building on part of filled area.[7]

In 1995 the City added an "outfall/diffuser section in the Columbia River" to an existing pipeline built in the 1950s that extended from the City's sewage-treatment plant located south of WHI to the Columbia River north of WHI.  Plaintiff's 60-day

---

[7] Plaintiff's First CWA Claim refers to Plaintiff's "Motion No. 4" in his Statement of Remaining Claims.  Plaintiff's Second CWA Claim refers to Claim No. I-A 7, and his Third CWA Claim refers to Claim No. I-A 9.

Notice does not address the alleged illegal placement of fill on WHI during the 1995 construction of the outfall/diffuser section associated with the pre-existing pipeline. Instead the subject of Plaintiff's 60-day Notice is the 1999 construction of the road across WHI. The road was built in 1999 over the top of a trench previously dug to accommodate a new pipeline that was laid parallel to the existing pipeline. As noted, Permit 97-1482 only authorized the placement of fill in the vicinity of the newly constructed pipeline.

The Court, therefore, concludes Plaintiff's 60-day Notice was not sufficient to give City Defendants adequate notice of Plaintiff's First CWA Claim.

> b. <u>Plaintiff's Second CWA Claim: The City unlawfully filled a wetland on Lot 100 in an area adjacent to Canoe Bay while doing work specified in Permit 97-1482</u>.

Plaintiff's 60-day Notice identifies the specific location of Lot 100 where the alleged illegal fill occurred as "Section 28 and 29, township 2, north range 1 east, Willamette meridian, Multnomah County."

City Defendants concede the road constructed over the newly installed pipeline runs through Section 28. According to City Defendants, however, neither the road nor any part of the newly installed pipeline runs through Section 29. In addition, City Defendants contend there is no connection between the alleged

unlawful fill identified in Plaintiff's claim and the construction
of the road running through Section 28 that is the subject of the
60-day Notice.  City Defendants, however, concede the "positions
of the parties on this point are closely balanced."

The Court finds Plaintiff's claim makes specific
reference to the work "specified in Permit 97-1482."  The issuance
of that Permit facilitated the City's installation of the new
pipeline across WHI, which, in turn, resulted in  construction of
the road that is the subject of Plaintiff's 60-day Notice.  The
Court, therefore, concludes Plaintiff's 60-day Notice was
sufficient to advise City Defendants that Plaintiff intended to
bring an action that would involve allegations of illegal fill in
the vicinity of the newly installed pipeline that may also relate
to road construction activities.

> c.  <u>Plaintiff's Third CWA Claim :  The City
> unlawfully disposed of demolition debris
> from the Rose Garden in Portland's Washington
> Park in United States waters near PIR</u>.

The Court finds Plaintiff's 60-day Notice does not
refer, either specifically or generally, to any conduct of City
Defendants related to the alleged disposal of demolition debris
from the Rose Garden to an area near PIR, which is on land more
than one mile from WHI.

In summary, the Court concludes Plaintiff's 60-day
Notice was inadequate to give City Defendants notice as required

by the CWA of Plaintiff's First and Third CWA Claims, and,
therefore, the Court grants City Defendant's Motion for Partial
Summary Judgment as to those claims.  The Court, however,
concludes Plaintiff's 60-day Notice was adequate to give City
Defendants notice of Plaintiff's Second CWA Claim as required by
the CWA.  Accordingly, the Court denies City Defendants' Motion
for Partial Summary Judgment as to that claim.

**B.  Motion for Summary Judgment (#503) as to Plaintiff's
Claim that the City Filled Wetlands Without a Permit.**

The City moves for summary judgment on Plaintiff's claims
that the City (1) illegally filled a wetland on Lot 100 adjacent
to Canoe Bay while doing work specified in Permit 97-1482 and
(2) illegally decreased the wetland footprint on WHI by building a
road on top of the newly installed outfall pipeline without
obtaining a CWA Permit.  The City also joins in Federal
Defendants' Motion for Summary Judgment that Permit 97-1482 was
validly issued and authorized the City to place fill into wetlands
on WHI.

The City asserts it filled approximately 2,800 square feet of
wetland and built a road on top of the newly installed outfall
pipeline pursuant to and in accordance with Permit 97-1482.

Even assuming the validity of Permit 97-1482, Plaintiff
asserts the City filled far more than a total of 2,800 square feet
of wetlands on WHI because the fill authorized by Permit 97-1482

was merely a continuation of fill placed on WHI in 1995 when the
City added the outfall/diffuser to the existing pipeline that ran
parallel to the new pipeline and built a road on top of the
pipeline.

As noted, the Court has denied Federal Defendants' Motion for
Summary Judgment regarding the validity of Permit 97-1482 on the
ground that Federal Defendants failed to provide adequate
opportunity for public comment under § 404(a) of the CWA before
the Corps issued the Permit. *See* 33 U.S.C. § 1344(a). On the
other hand, the Court has ruled Plaintiff may not assert claims
based on alleged illegal fill activity in 1995 because Plaintiff
failed to give an adequate 60-day Notice to Federal Defendants as
required by the CWA regarding his intent to pursue claims based on
that fill activity.

Accordingly, the Court grants the City Defendants' Motion for
Summary Judgment against Plaintiff's specific claims regarding the
fill activity the City undertook in 1995 or earlier. The Court,
however, denies the City Defendants' Motion for Summary Judgment
against Plaintiff's claim regarding the City's fill activity
specifically undertaken pursuant to the authority granted by
Permit 97-1482, which allegedly resulted in the unlawful filling
of 2,800 square feet of wetland on WHI.

III. **Defendant Port's Motions**.

A. **Motion for Partial Summary Judgment (#408) Regarding the**

**Adequacy of Plaintiff's 60-day Notice.**

The Port asserts it is entitled to partial summary judgment on all claims by Plaintiff that the Port placed fill on WHI without a valid permit before July 30, 1994, because Plaintiff's 60-day Notice gave the Port notice of potential claims arising only after that date. Plaintiff asserts he gave adequate notice of all claims against the Port because he provided "sufficient information to permit [the Port] to identify the alleged wrongdoing."

As noted, the EPA has promulgated rules that specify the appropriate contents of a 60-day Notice. The notice must include "the specific requirement alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, *the date or dates of the alleged violation*, and the full name, address, and telephone number of the person giving notice." 40 C.F.R § 135.12(a)(emphasis added).

In his Statement of Remaining Claims I-A 3 and 4, Plaintiff contends the Port violated the CWA based on fill and dredge activities occurring in 1977-78, 1984, 1985, and 1987 in addition to the alleged violations after 1994. The record reflects, however, Plaintiff unambiguously states in his 60-day Notices only that the Port filled waters of the United States and disposed of dredged materials across WHI "without a valid CWA permit from July

30, 1994, and continuing to the present day . . . ."  Leppo Decl., Ex. 1 and 2.

Based on this record, therefore, the Court grants the Port's Motion for Partial Summary Judgment as to Plaintiff's claims that the Port allegedly disposed illegally of dredged materials and illegally placed fill on WHI before July 30, 1994, because of the inadequacy of Plaintiff's 60-day Notice pursuant to the CWA.

**B.  Motion for Partial Summary Judgment (#411) as to Plaintiff's Claims against the Port Regarding Violations of Permit 5254.**

The Port asserts it is entitled to partial summary judgment on Plaintiff's claim pertaining to the Port's alleged violation of conditions set forth in Permit 5254.  In addition, the Port objects to evidence submitted by Plaintiff in opposition to the Port's Motion.

1.  <u>Background</u>.

The Corps issued Permit 5254 to PGE in April 1989.  The permit authorized PGE to place fill on 126.5 acres on WHI in preparation for future, unspecified, marine-oriented industrial development.  Because PGE's proposed fill activity would unavoidably affect United States waters, the Corps imposed a mitigation requirement on PGE to create an eight-acre wetland on WHI.

Permit 5254 expired on August 31, 1992.  On November 17, 1992, at PGE's request, the Corps extended the Permit until August

31, 1994.  When the Corps granted PGE's extension request, the Corps modified the Permit to require PGE to perform mitigation as required under the original Permit before PGE undertook any filling activities authorized by the Permit.  On May 31, 1994, the Port acquired the eastern half of WHI from PGE under threat of condemnation, including the area subject to Permit 5254.

Plaintiff originally asserted claims relating to Permit 5254 against both PGE and the Port.  Plaintiff's claim against PGE, however, was dismissed by Judge Jones because the citizen suit provisions of § 505(a) of the CWA, 33 U.S.C. § 1365(a), limit such a claim to continuing violations that occur on or after a plaintiff files a complaint.  Plaintiff's claim against PGE relating to Permit 5254 involved alleged past violations only. *See* Opin. and Order at 6-7 (issued Mar. 22, 2002).

As to the Port, Plaintiff alleges "[i]n 1996 the Port constructed a dredged spoils containment dike in the WHI Wet Meadow in United States waters without a CWA permit.  The filling was also in violation of effluent limitation of permit # 5254." *See* Statement of Remaining Claims I-A 1.  Plaintiff actually states two separate claims against the Port under the CWA:  (1) the disposal of dredged spoils on WHI without a permit (*i.e.,* unrelated to Permit 5254) and (2) violation of a specific effluent limitation provision contained in Permit 5254.  Only the

latter claim is the subject of the Port's Motion.[8]

> 2. The Port's Objection to Plaintiff's Twelfth
>    Affidavit.

The Port objects to the Court's consideration of any of the materials attached as appendices to Plaintiff's Twelfth Affidavit, which is submitted in opposition to the Port's Motion. Attached to the Affidavit are appendices primarily relating to alleged admissions by the Federal Defendants on issues pertaining to Permit 5254. These purported admissions for the most part are also included in Plaintiff's Tenth and Thirteenth Affidavits, which this Court has stricken. Other "admissions" by Federal Defendants included in Appendix 7 of Plaintiff's Twelfth Affidavit suffer from the same defects as those in the Tenth and Thirteenth Affidavits and, accordingly, are also inadmissible. In addition, documents such as maps and diagrams that Plaintiff attaches to these purported admissions are not properly authenticated. Accordingly, the Court disregards Plaintiff's Twelfth Affidavit as it relates to the Port's Motion.

---

[8] The Port requests the Court to construe its Motion to apply to "any and all CWA liability claims . . . premised on Permit 5254." The Court, however, addresses only the claim specifically identified in the Port's Motion and declines to anticipate other issues that may arise regarding Permit 5254. As noted, the issues remaining in this case are limited to Plaintiff's Statement of Remaining Claims as identified by this Court in its Order issued October 26, 2004, as well as any issues that may arise as a result of amendments to claims authorized by the Court.

3.  <u>Port as Permittee or Successor-in-Interest under Permit 5254</u>.

Plaintiff asserts the Port is a permittee and/or PGE's successor-in-interest to the provisions and requirements of Permit 5254.  In its Motion for Summary Judgment, however, the Port argues Plaintiff has not submitted any "evidence that the permit was ever transferred to the Port."  Although that may be true, the Port nonetheless has the burden under Fed. R. Civ. P. 56(e) of presenting evidence that the rights and conditions of Permit 5254 did not devolve to the Port as a matter of law when the Port purchased PGE's property on WHI.  The Court finds the Port has not met its burden.

Permit 5254 provides PGE is "authorized to perform work in accordance with the terms and conditions specified," and the Permit applies to PGE as the permittee "or any future transferee." As to PGE's obligations, the "General Conditions" applicable to Permit 5254 provide in relevant part:

> 2.  You [PGE] must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit.  You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below.
>
> *   *   *
>
> 4.  *If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit*

>*to this office to validate the transfer of this*
>*obligation.*

Leppo Decl. Ex. 1 at 1, 3 (emphasis added).

In its Motion, the Port states in a conclusory manner that it "is at a loss to understand the basis upon which it would ever be liable under the CWA for alleged violations of a federal CWA permit for which it was never the permittee." The Port then asserts "Permit 5254 was issued to PGE. It was not transferred to the Port." In a footnote, the Port contends "[t]he terms of the agreement [between the Port and PGE] include a contractual apportionment of any of PGE's then-existing wetland mitigation obligations. The contract could not and did not transfer . . . Permit 5254 to the Port." The Port, however, does not explain why the sale agreement between PGE and the Port did not transfer the authorization contained in Permit 5254, particularly when such a transfer appears to be specifically required by the terms of the Permit.

Based on this record, the Court concludes the Port has failed to establish as a matter of law that the rights, conditions, and obligations of Permit 5254 were not transferred by PGE to the Port upon the sale of the property in 1994.

4. <u>Citizen's Suit to Enforce Permit 5254 Conditions</u>.

Plaintiff contends the Port violated effluent limitations in Permit 5254 when it built a dredged spoils

containment dike on the WHI property purchased from PGE.

Permit 5254 was issued under § 404(a) of the CWA, 33 U.S.C. § 1344(a), which authorizes the issuance of permits for the "discharge of dredged or fill material into the navigable waters at specified disposal sites."

Although the Port does not concede it was obligated to limit effluent on the WHI property purchased from PGE, the Port asserts, in any event, that Plaintiff is not entitled to bring this action to enforce the effluent limitations in Permit 5254 because citizen suits are not authorized for the purpose of bringing claims for § 404(a) permit violations.

Section 505(a)(1) of the CWA authorizes citizen suits against any person "who is alleged to be in violation of an effluent standard or limitation under this chapter. . . ." 33 U.S.C. § 1365(a)(1). In § 505(f), Congress identified each "effluent standard or limitation" to which the right to maintain a citizen suit applies:

> For purposes of this section, the term "effluent standard or limitation under this chapter" means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under section 1341 of this title; (6) *a permit or condition thereof issued under section 1342 of this title, which*

> *is in effect under this chapter (including a*
> *requirement applicable by reason of section*
> *1323 of this title); or* (7) a regulation under
> section 1345(d) of this title.

33 U.S.C. § 1365(f)(2)(emphasis added).  Section 404(a) permit violations of the kind alleged by Plaintiff are not included in the list of statutory violations for which a citizen's suit is allowed.

Moreover, in *Northwest Environmental Defense Center v. United States Army Corps of Engineers,* this Court held "§ 1365(a)(1) does not permit an action for violation of the terms and conditions of [§ 404] permits issued under 33 U.S.C. § 1344." 118 F. Supp. 2d 1115, 1118 (D. Or. 2000).  In a well-reasoned analysis, Magistrate Judge Dennis J. Hubel stated in his Findings and Recommendation issued on June 29, 2000, and adopted by Judge Jones on September 8, 2000:

> At first glance, it appears that the
> applicable definition is at subsection (f)(6),
> which deals with "a permit or condition
> thereof."  However, subsection (f)(6) refers
> to permits issued under § 1342, and § 1342
> pertains only to NPDES permits issued by the
> Administrator of the EPA.  The permits in this
> case were issued by the Corps under § 1344;
> permittees under § 1344 are excepted from the
> NPDES permit system.  33 U.S.C. § 1342(a)(1).
>
> The statutory language makes the intent
> of Congress clear, and the court must follow
> it . . . .  There are no implied private
> causes of action under the CWA; the court
> therefore has no authority to read into
> subsection (f)(6) a definition which would
> include permits issued by the Corps [pursuant

to Section 404]. . . .

*Id.* at 1118 (internal citations omitted). *But see Greenfield Mills, Inc. v. O'Bannon,* 189 F. Supp. 2d 893, 901 (N.D. Ind. 2002) ("Obtaining a [§ 404] permit is an important effluent limitation, and private attorneys general may enforce that limitation via citizen suits."); *N.C. Shellfish Growers Ass'n v. Holly Ridge Ass'n,* 200 F. Supp. 2d 551, 558 (E.D.N.C. 2001) ("Plaintiffs are authorized to bring a Section 505 citizens suit for Defendant's alleged failure to comply with Sections 402 and 404 of the CWA.").

The Court notes neither *Greenfield Mills* nor *North Carolina Shellfish Growers* addresses the fact that § 505(f) does not include § 404 permit violations in the list of those statutory "effluent standard and limitation" violations that give rise to citizens suits under § 505(a)(1). The Court, therefore, concludes these cases are not persuasive authority for the proposition that § 404 permit violations give rise to citizens suits under § 505(a)(1). On the contrary, this Court concludes the violation of a § 404 permit condition cannot form the basis for a citizen suit under 33 U.S.C. § 1365(a)(1). *See N.W. Envtl. Def. Cen.,* 118 F. Supp. 2d at 1118.[9]

_____

[9] Although the Court concludes Plaintiff does not have the right to bring a citizens suit based on an alleged violation of the conditions of a § 404 permit, Plaintiff does have the right to bring an action under the APA challenging the validity of a § 404 permit. *See* Discussion.

In summary, the Court concludes on this record that the Port has failed to establish as a matter of law that PGE did not transfer the rights, conditions, and obligations of Permit 5254 upon the sale of its WHI property to the Port in 1994. Nevertheless, the Court also concludes the CWA does not authorize Plaintiff to bring a citizens suit to redress the Port's alleged violations of Permit 5254 because the Permit was issued pursuant to § 404(a) of the CWA.

Accordingly, the Court grants the Port's Motion for Partial Summary Judgment on Plaintiff's claims against the Port arising from the Port's alleged failure to comply with the terms of Permit 5254.

**C. Motion for Partial Summary Judgment (#462) as to Plaintiff's Claims against the Port for Violation of the APA and NEPA.**

The Port seeks summary judgment against Plaintiff's purported APA and NEPA claims against the Port and Plaintiff's potential "*ultra vires*" claims against the Port. The Port asserts "it is not entirely clear to what extent Plaintiff intends to state a claim under the APA or NEPA against the Port." In addition, the Port asserts even though Plaintiff has not asserted *ultra vires* claims against the Port explicitly, Plaintiff "has asserted that he seeks relief from the Port should he prevail on his [*ultra vires*] claims" against Federal Defendants.

Plaintiff responds succinctly: "Let me say it again. As

Plaintiff I do not allege any APA, NEPA, or *ultra vires* claim against the Port, nor could I." As the Port points out, however, Plaintiff, indicates he will seek some form of relief from the Port if and when the Court rules in favor of Plaintiff on his APA, NEPA, and *ultra vires* claims against Federal Defendants.

Based on Plaintiff's response, it is clear there is no present case or controversy as to any current claims by Plaintiff against the Port arising under the APA or NEPA or from "ultra vires" claims against Federal Defendants. On this record, therefore, the Court denies as moot the Port's Motion for Partial Summary Judgment as to these potential claims.

**D.  Motion for Summary Judgment (#471) as to Plaintiff's Claim Regarding His Right Under the Public Trust Doctrine to Use Navigable Waters Existing at Statehood and as to the Port's Claim of Ownership Rights to the Gateway Triangle on WHI.**

Plaintiff asserts the Port has violated his rights to use "Public Trust" lands (*i.e.,* in this case, submerged and submersible lands on WHI) under the Ninth and Fourteenth Amendments to the United States Constitution. The gravamen of Plaintiff's claim is that the Port, following its purchase of land on WHI from both PGE and others, has alienated Plaintiff's Ninth Amendment rights under the Public Trust Doctrine to use such lands for purposes of navigation. The Public Trust Doctrine devolves on the state, as trustee for the people, the responsibility for

preserving and protecting the right of the public to use submerged and submersible waters for purposes of navigation, fishing, and recreation. *See Phillips Petroleum Co. v. Miss.*, 484 U.S. 469, 488 (1988). In addition, Plaintiff asserts any Oregon state statutes that facilitate the alienation of Plaintiff's right to use such lands violates the Fourteenth Amendment. Finally, Plaintiff contends the Port falsely asserts ownership to land on WHI referred to as the "Gateway Triangle" that was purportedly transferred to the Port by quitclaim deed.

The Port argues it is entitled to summary judgment on Plaintiff's claim under the Public Trust Doctrine because Plaintiff has failed to identify any federal law that provides a right of action for the alleged violation of rights encompassed by that Doctrine. The Port also contends any determination of Plaintiff's rights under the Doctrine and the Port's alleged alienation of those rights must be decided according to Oregon state law. In addition, the Port asserts it is the title owner of the parcel of land on WHI that Plaintiff calls the Gateway Triangle, and any dispute regarding the ownership of that parcel of land is subject to state rather than federal law.

In light of the exclusive application of state law to the issues relating to the alienation of rights under the Public Trust Doctrine and the ownership of the Gateway Triangle, the Port asserts this Court's subject matter jurisdiction, if any, must be

founded on supplemental jurisdiction under 28 U.S.C. § 1367.
According to the Port, however, neither Plaintiff's Public Trust
Doctrine claim nor his claim regarding the Gateway Triangle are
related to any of his federal claims brought under the CWA, which
form the basis for this Court's subject matter jurisdiction.  The
Port, therefore, contends it is entitled to summary judgment that
this Court lacks subject matter jurisdiction over these state-law
claims.

A challenge to a federal court's subject matter jurisdiction
is usually made in a motion to dismiss for lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1) unless the
jurisdictional question is intertwined with the merits, in which
case the court may consider it as a motion to dismiss under Rule
12(b)(6) or a motion for summary judgment.  *See Holt v. United
States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Here, however, the
jurisdictional question is not intertwined with the merits of
Plaintiff's case.  Accordingly, the Court construes the Port's
Motion on this issue as a Motion to Dismiss for Lack of Subject
Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).

1. Plaintiff's Public Trust Claim Arises Under State
   Law.

In *Idaho v. United States*, the Supreme Court reiterated
its long-held principle that navigable waters of the United States
were held for the ultimate benefit of new states as they entered
the Union.  533 U.S. 262, 272 (2001).  Thus, upon entering the

Union, new states such as Oregon were placed on an "equal footing" with the original thirteen states.  Title to the land under the navigable waters within its borders passed from the United States to Oregon when it became a state in 1859.  *Id.*

After Oregon entered the Union, title to the land under the navigable waters remained in the State of Oregon subject to only one limitation:  "the paramount power of the United States to ensure that such waters remain free to interstate and foreign commerce."  *Montana v. United States,* 450 U.S. 544, 551 (1981) (citing *United States v. Oregon,* 295 U.S. 1, 14 (1935)).  Oregon, therefore, acquired title to the navigable waters around WHI subject to the Public Trust Doctrine.  Explicating the Doctrine, the Oregon Supreme Court stated:

> [W]ith regard to the lands underlying the navigable waters of the state, . . . although the title passed to the state by virtue of its sovereignty, its rights were merely those of a trustee for the public.  In its ownership thereof, the state represents the people, and the ownership is that of the people in their united sovereignty, while the waters themselves remain public so that all persons may use the same for navigation and fishing.  These lands are held in trust for the public uses of navigation and fishery.

*Corvallis Sand & Gravel Co. v. State Land Bd.,* 250 Or. 319, 334 (1968)(citing *Winston Bros. Co. v. State Tax Comm'n,* 156 Or. 505, 511 (1936)).

Moreover, title to the land under navigable waters

within a state's boundaries is determined by that state's law rather than federal law. *Montana*, 450 U.S. at 551. "Whether the State retains in trust for the public the same title to [the state's] lake beds and the same fishing and hunting rights in [the state's] waters . . . is, therefore, entirely a matter of [state] law, subject only to the exercise by the United States of one of its constitutional powers." *Id. See also Corvallis Sand and Gravel,* 429 U.S. at 371-72; *Shively v. Bowlby,* 152 U.S. 1 (1894) ("The whole question is for the state to determine for itself; it can say to what extent it will preserve its rights of ownership in them, or confer them on others.").

Nonetheless, Plaintiff argues federal law applies to his claims under the Public Trust Doctrine because the Ninth Amendment to the United States Constitution, which was made applicable to the states through the Fourteenth Amendment, establishes a fundamental liberty interest in all American citizens to use the rights conferred under the Public Trust Doctrine.

The Court disagrees. The Ninth Amendment provides: "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." Plaintiff has not cited any case and the Court has not found any case in which a court has applied the Ninth Amendment as a source of federal law regarding issues of ownership or use of submerged and submersible waters arising under the Public Trust Doctrine.

The absence of such authority is hardly surprising in light of the Supreme Court's repeated and unequivocal holdings that such issues are a matter of state law.

2. <u>Plaintiff's Claim Regarding the Port's Ownership of the Gateway Triangle</u>.

The Port asserts it purchased from PGE the land Plaintiff refers to as the Gateway Triangle. Plaintiff, however, contends the Port has never owned the land because the State of Oregon never deeded that parcel to PGE in the first place and, therefore, the Port "obtained the title from a party whose sole title was based on a quit claim deed from a rail holding company that only had an easement." Finally, Plaintiff appears to argue the Gateway Triangle is also part of the land transferred to the State of Oregon under the Public Trust Doctrine.

The Court notes the fundamental issue here also is whether the Court has subject matter jurisdiction over Plaintiff's claims. Like the issue pertaining to the Public Trust Doctrine, whether PGE properly transferred ownership of the Gateway Triangle to the Port is a matter of state law.

3. <u>Supplemental Jurisdiction over State-Law Claims</u>.

As noted, the Port asserts Plaintiff's state-law claims are not sufficiently related to Plaintiff's federal claims to give rise to this Court's supplemental jurisdiction.

A district court with original jurisdiction over any

civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A state-law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together.  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).  "The statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it."  *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001)(citation omitted).  Supplemental jurisdiction is constitutional as long as the pendent state law claim is part of the same "case or controversy" as the federal claim.  *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002).

        According to the Port, the "gravamen of [Plaintiff's] remaining federal claims is that Port, the Corps, and the City filled areas of WHI without a valid [CWA] permit. . . .  To resolve [the Public Trust and Gateway Triangle claims] in contrast, the Court would have to identify the extent of the state of Oregon's ownership of WHI," which is a matter of state law. According to the Port, these state-law issues will not "elucidate whether the Port, the Corps, or the City filled areas of WHI

without a CWA permit."

The Court has carefully reviewed Plaintiff's Complaint and the materials he submitted in response to the Port's summary judgment motion. The Court, however, is unable to discern any connection regarding Plaintiff's state-law claims that address the ownership of parts of WHI, the State of Oregon's obligations under the Public Trust Doctrine, and Plaintiff's federal-law claims regarding alleged CWA violations. The clearest guide to the nature of Plaintiff's state-law claims is Plaintiff's own statement of the remedy he seeks if he prevails on those claims:

> [I] seek[] only to have the Constitutional law of Oregon reaffirmed and the State's treasury increased.[10] [My] requested relief here would not change the nature of the State's ownership. Instead, the requested relief would restore the law and the Public Trust with respect to [WHI]. The restoration of state property to the state restores rather than disturbs the balance of state law.

Pl.'s Resp. Mem. at 25. Thus, the Court concludes Plaintiff's concern for the State of Oregon's financial well-being and the reaffirmation of rights under Oregon's Constitution are state rather than federal concerns.

Based on this record, the Court concludes Plaintiff's state-law claims against the Port are not related to the federal-

_____

[10] Plaintiff's reference to the "State Treasury" pertains to his contention that the State is required to manage its lands, including WHI, for the exclusive benefit of the "common schools."

law claims arising under the CWA and, by extension, under the APA and NEPA.  In other words, the ultimate resolution as to whether Federal Defendants, the City, or the Port violated the CWA by placing fill and/or disposing of dredged spoils on WHI will not bear on the outcome of Plaintiff's state-law claims regarding the ownership of either the submerged or the submersible lands on WHI or the Gateway Triangle.  Similarly, the resolution of Plaintiff's state-law claims will not affect in any manner the outcome of Plaintiff's federal claims.

Accordingly, the Court concludes it does not have supplemental jurisdiction over Plaintiff's claims against the Port concerning the Public Trust Doctrine or the ownership of the Gateway Triangle.

In summary, on this record, the Court construes the Port's Motion for Summary Judgment on these issues as a Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. 12(b)(1)(#471), grants the Port's Motion, and dismisses these claims.

**IV.  <u>Plaintiff's Motions</u>.**

**A.  Motion for Partial Summary Judgment (#494) Regarding the Port's Construction of a Containment Dike on WHI.**

Plaintiff alleges the Port built a containment dike in 1996

in the "Wet Meadow,"[11] a wetlands area on WHI, using dredged spoils from the Columbia River.  According to Plaintiff, the dike restricts the flow of the Columbia River below the Ordinary High Water Line.  Plaintiff further alleges the Port did not obtain a § 404 permit authorizing the disposal of dredged spoils into the wetlands.  Finally, Plaintiff asserts the Port now seeks an "after-the-fact" § 404 Permit from the Corps to avoid the consequences of its illegal actions.

Plaintiff seeks partial summary judgment that the Port violated the CWA and is liable for the illegal disposal of dredged spoils it used to build the containment dike.  Plaintiff also seeks an injunction requiring the Port to remediate its illegal action.

The Port concedes and Federal Defendants confirm the Port built a "berm" in 1996 using sand dredged from the Columbia River by the Corps after flooding earlier in the year caused a significant accumulation of sand in the navigation channel.  The Port alleges it did not obtain a § 404 permit because the Port believed at the time that the interior areas of WHI met the criteria for wetlands (below the elevation of 10.7 feet mean sea level (MSL)) based on a wetlands delineation conducted for the Port by an independent contractor in 1993 and submitted to the

---

[11] The "wet meadow" is a term created by Plaintiff and does not identify formally a particular area of WHI.

Corps for a CWA jurisdictional determination in 1995.  The Port
disposed of the dredged spoils above that elevation.

After the Port disposed of the Corps's dredged spoils in
1997, the Corps issued a wetlands delineation in which it
concluded all interior areas of WHI below 12 feet MSL were
wetlands.  As a result of the difference in the earlier and later
wetland delineations as well as a six-inch adjustment in a survey
benchmark for the elevations, the Port determined it had
inadvertently disposed of some of the dredged spoils on 1.18
acres of wetlands.  The Port acknowledges it has applied to the
Corps for an "after-the-fact" permit, and, in return, the Port
will perform an approved wetland-mitigation program providing
compensation and mitigation for the unauthorized disposal.  The
Port's permit application is pending.

Federal Defendants have joined the Port in opposing
Plaintiff's Motion on grounds other than those asserted by the
Port.  Federal Defendants note Judge Jones previously upheld the
Corps's 1998 wetlands delineation and determined that the reach of
the CWA as to United States waters around WHI, other than interior
wetlands, extends only to the Ordinary High Water Line.  *See* Opin.
and Orders issued August 11, 2003, and March 19, 2004,
respectively.  The Corps asserts its decision regarding the Port's
"after-the-fact" permit application will take those earlier
rulings into consideration and specifically will address some of

the factual issues raised by Plaintiff in this Motion, including the extent of the wetlands in the area where the Port disposed of the dredged spoils in 1996 and the extent of the wetlands that was actually filled as a result of the unpermitted disposal.  The Corps previously stated it expected to make a decision on the Port's application by the end of July 2005, although the Corps has not advised the Court of any such decision at this time.

Under these circumstances, Federal Defendants request this Court to defer ruling on Plaintiff's Motion until after the parties have had an opportunity to review the Corps's upcoming decision.  To support their position, Federal Defendants cite to *Montgomery Environmental Coalition v. Washington Suburban Sanitation Commission,* 607 F.2d 378 (D.C. Cir. 1979).

In *Montgomery,* the court applied the "doctrine of primary jurisdiction" to defer a final decision on an issue that was then "concurrently cognizable before [the] administrative agency" to allow the agency the opportunity "to bring its expertise to bear before the court reached a final decision" and possibly "to avoid the need for a final decision" by the court.  Id. at 385. *See also United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1369 (9th Cir. 1987)("[Q]uestion is whether the court should, in its discretion, defer a factual question to the administrative agency under the primary jurisdiction doctrine.").

The Court agrees with Federal Defendants that it would be

premature for the Court to rule on this issue before the Corps has had an opportunity to issue its decision regarding the merits of the Port's "after-the-fact" permit application.  Accordingly, the Court denies Plaintiff's Motion as premature.

After the Corps has issued its decision, Plaintiff may seek leave of Court to file a summary judgment motion regarding this issue.  Before Plaintiff decides whether to seek leave of Court to file such a motion, however, the Court cautions Plaintiff to consider that much of the "proof" to support such a motion is contained in Plaintiff's Twelfth Affidavit, which the Court has previously stricken.

**B. Motion for Partial Summary Judgment (#496) against Federal Defendants based on the Allegedly Unlawful Disposal of Dredged Material the Corps, the Port, and PGE.**

Plaintiff moves for partial summary judgment on his claim that the Corps, the Port, and PGE illegally disposed of dredged spoils in the "Wet Meadow" on WHI in 1987.

The Court denies as moot Plaintiff's Motion as to PGE because Plaintiff's CWA claims against PGE have been dismissed. *See* Opin. and Order issued March 22, 2002.  The Court also denies Plaintiff's Motion as to the Port in light of the Court's ruling herein that Plaintiff failed to identify claims arising before 1994 in his CWA 60-day notice to the Port.

As to Federal Defendants, Plaintiff alleges the Corps

"connived" with the Port and "ratified" the Port's illegal disposal of dredged spoils into the Wet Meadow on WHI in 1987 without requiring the Port to obtain a § 404 permit. The parties do not dispute the Port disposed of dredged materials on WHI in 1987. The issue is whether the Corps defined the area where the Port disposed of the dredged spoils to be wetlands in 1987.

According to Plaintiff, the Fish and Wildlife Service (FWS) created wetland inventory maps for Oregon that identified the Wet Meadow where the dredged spoils were placed as a wetland. Plaintiff relies substantially on photographs, map overlays, and purported admissions by Federal Defendants to establish where those wetlands are located on WHI. The Court, however, has ruled that the map overlays and photographs Plaintiff relies on to establish the location of wetlands on WHI are not properly authenticated and, therefore, Federal Defendants are not deemed to have admitted the numerous facts upon which Plaintiff now relies.

In addition, Federal Defendants assert a 1986 wetland delineation performed by Corps biologist Brian Lightcap (Lightcap Delineation) did not include the area of the 1987 disposal as a wetland. According to Federal Defendants, the Corps rather than the FWS has authority to make jurisdictional determinations; *i.e.,* to identify areas comprising United States waters and wetlands for purposes of compliance with the CWA. *See* 33 C.F.R. §§ 325.9, 329.14, 325.15.

Both the Port and Federal Defendants argue the Court should grant summary judgment *sua sponte* in favor of the Port and the Corps on this issue. Neither party, however, has filed a separate cross-motion for summary judgment on the merits of Plaintiff's claim regarding the illegal disposal of dredged spoils in 1987.

On this record, the Court denies Plaintiff's Motion for Partial Summary Judgment against Federal Defendants. As noted, Plaintiff's Motion for Summary Judgment against PGE is moot, and the Court earlier denied the Motion against the Port based on the fact that any such claim was not identified in Plaintiff's CWA 60-Day Notice.

In light of Plaintiff's *pro se* status, however, the Court declines to grant summary judgment *sua sponte* to Federal Defendants or to the Port, particularly since they had the opportunity to file such motions within the court-ordered deadlines.

**C. Motion for Partial Summary Judgment (#507) against Federal Defendants Based on the Corps's Failure to Take Enforcement Action against the Port for the Unlawful Disposal of Dredged Material on WHI.**

Plaintiff asserts the Corps had a mandatory duty to take enforcement action against the Port for its unauthorized disposal of dredged spoils into wetlands on WHI and for its use of the spoils as fill to construct a berm in the area in 1996. Plaintiff contends the Corps's failure to take enforcement action against

the Port "is an *ultra vires* violation" of the Corps's delegated

responsibility to enforce the CWA.

As noted, the Court has denied Plaintiff's Motion for Partial

Summary Judgment regarding the Port's liability for its

unauthorized disposal of the dredged spoils into the wetlands

pending a final decision by the Corps on the Port's after-the-fact

permit application.  Although Federal Defendants have not urged

the Court to defer from ruling on this matter, the Court

concludes, in the exercise of its discretion, all issues relating

to the Port's unpermitted 1996 dredge disposal and fill activities

should be addressed at the same time; *i.e.*, after the Corps has

issued its final decision on the Port's application, which is

expected soon.

Accordingly, the Court denies as premature Plaintiff's Motion

for Partial Summary Judgment against Federal Defendants based on

the Port's unpermitted fill and dredging activity in 1996.  As

with his Motion for Partial Summary Judgment against the Port,

Plaintiff may seek leave to file a Motion for Summary Judgment on

this issue after the Corps issues its final decision.


## CONCLUSION

For these reasons, the Court:

1.  **DENIES** Plaintiff's Sixth Motion to Take Judicial Notice

(#423);

2.  **DENIES** Plaintiff's Motion to Compel (#421);

3.  **GRANTS** Federal Defendants' Motion to Strike Plaintiff's Tenth Affidavit (#431);

4.  **GRANTS** Federal Defendants' Motion to Strike Plaintiff's Thirteenth Affidavit (#477);

5.  **GRANTS** the Port's Joinder in Motion to Strike Plaintiff's Tenth Affidavit (#457);

6.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#466) as to Plaintiff's claims against the Environmental Protection Agency;

7.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#469) as to Plaintiff's claim against Federal Defendants based on the Corps's alleged violation of the CWA, 33 U.S.C. § 1344(o);

8.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#474) as to Plaintiff's claim against Federal Defendants based on the Corps's determination that the Ordinary High Water Line marks the jurisdictional boundary of United States waters at WHI;

9.  **GRANTS** Federal Defendants' Motion for Summary Judgment (#479) on Plaintiff's claim regarding the 2002CDEIS.  In addition, the Court will permit Plaintiff to file a motion for leave to amend his Complaint no later than September 22, 2005, for the sole purpose of adding a claim that the 2002CDEIS violates NEPA, and, if Plaintiff files such a motion, any response by Federal Defendants is due no later than October 3, 2005.  No reply will be

permitted, and memoranda in support of and in opposition to such a motion shall be no longer than ten (10) pages. If Plaintiff files such a motion and the Court grants it, Federal Defendants shall have leave to file a dispositive motion against Plaintiff's 2002CDEIS claim;

10. **DENIES** Federal Defendants' Motion for Partial Summary Judgment (#481) as to Plaintiff's claim against Federal Defendants regarding the validity of Permit 97-1482;

11. **DENIES** Federal Defendants' Motion for Summary Judgment (#487) as to Plaintiff's NEPA claims against Federal Defendants regarding the 1998SEIS;

12. **GRANTS in part** and **DENIES in part** the City Defendants' Motion for Partial Summary Judgment (#395) regarding the inadequacy of Plaintiff's CWA 60-day Notice;

13. **GRANTS in part** and **DENIES in part** the City Defendants' Motion for Summary Judgment (#503) regarding Plaintiff's claim that the City unlawfully filled wetlands on WHI without a permit;

14. **GRANTS** the Port's Motion for Partial Summary Judgment (#408) based on the inadequacy of Plaintiff's CWA 60-day Notice;

15. **GRANTS** the Port's Motion for Partial Summary Judgment (#411) as to Plaintiff's claims against the Port arising from the Port's alleged failure to comply with the terms of Permit 5254 issued by the Corps;

16. **DENIES as moot** the Port's Motion for Summary Judgment

(#462) that the Port complied with NEPA and the APA in disposing
of dredged material on WHI;

17.   Construes the Port's Motion for Summary Judgment (#471)
as to Plaintiff's claim under the Public Trust Doctrine and
Plaintiff's claim that the Port does not own the land comprising
the "Gateway Triangle" on WHI as a Motion to Dismiss for Lack of
Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1), **GRANTS**
the Motion, and **DISMISSES** these claims;

18.   **DENIES** as premature Plaintiff's Cross-Motion for Partial
Summary Judgment (#494) against the Port for allegedly building a
containment dike on WHI without a CWA permit;

19.   **DENIES** Plaintiff's Cross-Motion for Partial Summary
Judgment (#496) against Federal Defendants and the Port, and
**DENIES as moot** Plaintiff's Cross-Motion (#496) against PGE as to
Plaintiff's claims that these Defendants disposed of dredged
material into WHI wetlands without a CWA permit; and

20.   **DENIES** as premature Plaintiff's Cross-Motion for Partial
Summary Judgment (#507) that Federal Defendants' failed to take
action against the Port for disposing of dredged material on WHI
in violation of the CWA.

IT IS SO ORDERED.

DATED this 9th day of September, 2005.


/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

JonesCV00-1795-O&O.9-8-05.wpd