IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM MICHAEL JONES,                          CV 00-1795-BR

       Plaintiff,                              OPINION AND ORDER

v.

ROBERT ROSE, *et al.*,

       Defendants.


**WILLIAM MICHAEL JONES**
2716 N.E. Mason St.
Portland, OR 97211
(503) 284-0502

       Plaintiff, *Pro Se*

**KELLY A. JOHNSON**
Acting Assistant Attorney General
Environmental & Natural Resource Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044
(202) 305-0210

1  - OPINION AND ORDER

**MICHAEL J. ZEVENBERGEN**
Environmental & Natural Resource Division
Environmental Defense Section
United States Department of Justice
c/o NOAA
7600 Sand Point Way N.E.
Seattle, WA 98115
(206) 526-6607

**CYNTHIA J. MORRIS**
Environmental & Natural Resource Division
Environmental Defense Section
United States Department of Justice
P.O. Box 23986
Washington, D.C. 20026
(202) 616-7554

**MISTY LATCU**
Portland District, Corps of Engineers
333 S.W. First Avenue
Portland, OR 97204
(503) 808-4527

      Attorneys for Federal Defendants

**LINDA MENG**
City Attorney
**TERENCE L. THATCHER**
Deputy City Attorney
1200 S.W. Fourth Ave.
Portland, OR 97210
(503) 823-4047

      Attorneys for City of Portland Defendants

**HARDY MYERS**
Attorney General
**JOHN URQUHART**
Assistant Attorney General
Department of Justice
1162 Court St.
Salem, OR 97301
(503) 378-6313

      Attorneys for State of Oregon Defendants

2  - OPINION AND ORDER

**CARLA L. KELLEY**
Port of Portland
121 N.W. Everett St.
P.O. Box 3529
Portland, OR 97208
(503) 944-7031

**JEFFREY W. LEPPO**
**SCOTT J. KAPLAN**
Stoel Rives LLP
600 University St., Suite 3600
Seattle, WA 98101
(206) 624-0900

          Attorneys for Defendant Port of Portland

**DONALD H. PYLE**
Lane Powell Spears Lubersky, LLP
601 S.W. Second Ave., Suite 2100
Portland, OR 97204
(503 778-2100

          Attorneys for Defendant Miles L. Marsh

**LEE S. ARONSON**
Schulte Anderson Downes Aronson Bittner
811 S.W. Naito Parkway
Suite 500
Portland, OR 97204
(503) 223-1345

          Attorneys for Defendant Peggy Fowler

**BROWN, Judge.**

     This matter comes before the Court on Plaintiff's

Motion for Leave to Amend or Supplement Complaint (#564),

Plaintiff's Cross-Motion for Partial Summary Judgment (#494),

and the Port's Cross-Motion for Partial Summary Judgment (#588).

     For the following reasons, the Court **GRANTS** Plaintiff's

3  - OPINION AND ORDER

Motion for Leave to Amend, **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment, and **DENIES** the Port's Cross-Motion for Partial Summary Judgment.

<u>**PROCEDURAL BACKGROUND**</u>

On December 29, 2000, Plaintiff filed a lengthy Complaint alleging, *inter alia*, that Defendants illegally disposed of dredged materials on wetlands and in the waters around West Hayden Island (WHI) in violation of the Clean Water Act (CWA), 33 U.S.C. § 1251, *et seq.;* the National Environmental Policy Act (NEPA)*,* 42 U.S.C. § 4321, *et seq.;* and the United States Constitution.

The Court has resolved many of Plaintiff's claims over the past four years.[1]  On October 6, 2004, the Court ordered the parties to submit statements outlining the claims that remained unresolved.  In its September 12, 2005 Opinion and Order, the Court addressed multiple motions and cross-motions for summary and partial summary judgment on those remaining claims.  Among the issues the Court reserved for later proceedings were (1) a potential claim by Plaintiff against the Corps's 2003 Channel-Deepening Environmental Impact Statement (2003CDEIS) and (2) the

---

[1] The convoluted background of this case and a listing of the Court's rulings on dispositive motions are set forth in the Court's Opinion and Order issued September 9, 2005.

4  - OPINION AND ORDER

impact of a potential "after-the-fact permit" then under consideration by the Corps that, in effect, would authorize retroactively the filling of wetlands on WHI by the Port of Portland (Port).   The Motions now before the Court address these issues.

## PLAINTIFF'S MOTION TO AMEND

### Standards

Fed. R. Civ. P. 15(a) provides a party may amend a pleading after a responsive pleading has been filed only by leave of court unless the opposing party consents to the amendment.   Rule 15(a), however, also provides leave to amend "shall be freely given when justice so requires."   "This policy is to be applied with extreme liberality."   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The Supreme Court has recognized several factors for a district court to consider when determining whether justice requires the court to grant leave to amend.   Those factors include:

> undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to
> cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing
> party by virtue of allowance of the
> amendment, [and the] futility of the
> amendment.

*Id*. at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

5  - OPINION AND ORDER

## Discussion

**I.    Plaintiff'S Proposed Amendment.**

One of Plaintiff's original claims addresses the issuance of an environmental impact statement (1999CDEIS) by the Army Corps of Engineers in which the Corps, *inter alia*, analyzed the impact on the environment of the Corps's Columbia River Channel Deepening Project.  In 2000 the Corps began revising the 1999CDEIS to take into consideration the concerns of the States of Oregon and Washington regarding the environmental consequences of channel-deepening activities.  The Corps issued a draft supplemental EIS in 2002 and a final EIS in 2003 (2003CDEIS).[2]

In his Complaint, Plaintiff alleges the Corps's 1999CDEIS did not address adequately the effects of the disposal of dredged materials from the channel-deepening project on or around WHI.  The Corps moved for summary judgment against this claim based on Plaintiff's alleged lack of standing to assert such a claim.  The Court denied the Corps's motion.  *See* Opin. and Order at 39-42.

Plaintiff's Complaint was filed in 2000, and, therefore, Plaintiff obviously did not include a claim regarding the Corps's 2003CDEIS.  In his 2004 statement of remaining claims, however,

---

[2] Defendants assert Plaintiff incorrectly refers to the "2000CDEIS" and "2002CDEIS."  The Court notes there has been considerable confusion generated by Plaintiff and the Corps regarding the dates of original and supplemental environmental impact statements.  The two environmental impact statements at issue in this case are the "1999CDEIS" and the "2003CDEIS."

Plaintiff added a NEPA claim against the 2003CDEIS.  On April 29, 2005, Federal Defendants moved for summary judgment on the ground that the 2003CDEIS was not consummated as a final agency action before Plaintiff filed his Complaint, and, therefore, any NEPA claim regarding the 2003CDEIS was not subject to judicial review under the Administrative Procedure Act.  The Court agreed and granted summary judgment to Federal Defendants.  *See* Opin. and Order at 28.  The Court, however, granted Plaintiff permission to file a Motion for Leave to Amend his Complaint to assert such a claim.

II.  **Federal Defendants' Opposition.**

Federal Defendants oppose Plaintiff's Motion on the ground that it is futile, unduly prejudicial, and/or not in the interests of justice.

A.  **Futility - *Res Judicata*.**

A proposed amendment to a complaint "'is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim.'"  *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)(quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).  A plaintiff should be afforded an opportunity to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended complaint would be dismissed for failure to state a claim under Fed. R. Civ. P.

12(b)(6).  *Miller*, 845 F.2d at 214.  *See also DCD Programs*, 833 F.2d at 188.

Federal Defendants contend Plaintiff's NEPA claim against the Corps's 2003CDEIS is futile because it is barred by the doctrine of *res judicata*.  *Res judicata* applies when there is (a) a final judgment on the merits, (b) privity between parties, and (c) an identity of claims.  *Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

Federal Defendants assert one of the NEPA issues raised by Plaintiff in this litigation (*i.e.*, whether the Corps adequately considered the cumulative impacts of its dredging activities in its 2003CDEIS) has already been decided in *Northwest Environmental Advocates v. National Marine Fisheries, No.* CV 04-0666RSM, 2005 WL 1427696 (W.D. Wa., June 15, 2005)(*NWEA v. NMFS*).  In that case, the court upheld the Corps's analysis of the environmental impacts of the channel-deepening project in the 2003CDEIS against a variety of challenges made by NWEA, an environmental public-interest group.

    1.  <u>Final Judgment on the Merits</u>.

There is no question the court in *NWEA v. NMFS* issued a final judgment on the merits.

    2.  <u>Privity</u>.

Federal Defendants assert Plaintiff was in privity with

NWEA because he was an "on-and-off" member of that organization during the period the 1999CDEIS and the supplemental 2003CDEIS were being prepared and he participated in some public meetings during that process.

In *Tahoe,* the court concluded a nonparty is in privity with a party to the litigation when the interests of the nonparty and party are "so closely aligned as to be virtually representative." *Id.* at 1081. *See also Headwaters Inc. v. U.S. Forest Serv.,* 382 F.3d 1025, 1030 (9th Cir. 2004)("Even when the parties are not identical, privity may exist if there is substantial identity between parties, that is, a sufficient commonality of interest."). Clearly, Plaintiff and NWEA shared a commonality of interest in ensuring the Corps complied with NEPA requirements when it issued the 2003CDEIS, and that shared interest is reflected in Plaintiff's limited association with NWEA. Plaintiff asserts, however, and Federal Defendants do not rebut, that Plaintiff was not a member of NWEA when *NWEA v. NMFS* was filed or when Plaintiff filed his Complaint initiating this action.

Based on this record, the Court finds Plaintiff and NWEA were not in privity in *NWEA v. NMFS.*

3.  Identity of Claim.

An identity of claims may exist if the "newly articulated claims" in the second action are based on "the same

nucleus of facts" as those involved in the prior litigation and
those claims "could have been brought in the earlier action."
*Tahoe*, 322 F.3d at 1078.

   The Court concluded in its earlier Opinion and Order
resolving Plaintiff's claim as to the 1998CDEIS that *NWEA v. NMFS*
had no bearing on those issues.  Opin. and Order at 41-42 n.6.
In that case, NWEA asserted Endangered Species Act violations in
connection with its NEPA claims against the 1999CDEIS and
2003CDEIS.  The focus of Plaintiff's NEPA claim was the Corps's
failure to assess adequately the cumulative effects of the
Corps's permanent removal of large quantities of sediment from
the estuary of the Columbia River, the potential exposure of
toxins from sources within and outside the channel, and the
relative costs and benefits of the project.  Here Plaintiff's
NEPA claim focuses on the Corps's failure to assess adequately
the cumulative effects of dredge disposal on the wetlands and the
waters around WHI.

   Thus, the Court concludes Plaintiff's NEPA claim as to
the Corps's 2003CDEIS is not sufficiently similar to nor based on
the same nucleus of facts as the NEPA claims in *NWEA v. NMFS.*

   On this record, therefore, the Court concludes the doctrine
of *res judicata* does not bar Plaintiff's NEPA claim as to the
inadequacy of the Corps's 2003CDEIS.  Accordingly, Plaintiff's
assertion of a NEPA claim against Federal Defendants based on the

Corps's issuance of the 2003CDEIS is not futile.

**B.  Undue Prejudice**.

Whether an amendment to the complaint will cause undue prejudice to the defendant is the key factor for the court to consider when determining whether to grant a motion for leave to file an amended complaint.  *Eminence Capital,* 316 F.3d at 1052. The party who opposes amendment bears the burden to show prejudice.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Federal Defendants asserts the addition of a claim against the 2003CDEIS will unnecessarily delay matters that need to be resolved.  In particular, the Corps argues its "legitimate interest in repose" on the validity of the 2003CDEIS would be impaired in light of the fact that another district court already has determined the 2003CDEIS is adequate.  Nevertheless, Federal Defendants incongruously assert Plaintiff also could file his claim in a new case rather than burden this Court and the Defendants with a new claim in this case.

The Court, however, notes Plaintiff's claim against the 2003CDEIS is not a surprise to any of the parties because Plaintiff addressed the same issues in his claim against the 1999CDEIS.  In addition, even though the Court shares Federal Defendants' concern that this case should be resolved sooner rather than later, any resolution must dispose of all issues,

11 - OPINION AND ORDER

including whether the Corps's NEPA analysis of the 2003CDEIS ignored the cumulative effects of the Corps's dredging activities in the wetlands on and the waters around WHI.

**C.  Interests of Justice.**

Federal Defendants also contend the interests of justice are not served by allowing Plaintiff to amend his Complaint because the Ninth Circuit will be addressing the adequacy of the 2003CDEIS in the pending appeal of the *NWEA v. NMFS* decision.  If the Ninth Circuit reverses the district court's decision in *NWEA v. NMFS*, Federal Defendants assert there would be no need for Plaintiff to seek the same relief here.  Conversely, if the Ninth Circuit were to uphold the Corps's 2003CDEIS, a contrary ruling from this Court would result in conflicting judgments.

The doctrine of federal comity permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952).  *See also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982)(the "comity principle[ ] avoid[s] placing an unnecessary burden on the federal judiciary, and . . . avoid[s] the embarrassment of conflicting judgments.").

The doctrine of comity, however, does not apply in this instance because, as noted, the court in *NWEA v. NMFS* did not address the CWA issues raised in Plaintiff's NEPA claim in

12 - OPINION AND ORDER

connection with the 2003CDEIS.  Thus, a judgment adverse to
Federal Defendants on Plaintiffs' NEPA claim would not
necessarily be inconsistent with a judgment on the plaintiff's
NEPA claim in *NWEA v. NMFS,* which addressed unrelated Endangered
Species Act issues rather than issues that directly impact WHI.

Accordingly, the Court concludes Federal Defendants have not
established the interests of justice would be served by denying
Plaintiff leave to amend his Complaint to assert a NEPA claim
against the 2003CDEIS.

**III.  The Port's Opposition.**

The Port opposes Plaintiff's Motion on the grounds of
prejudice, undue delay, and the interests of justice.

**A.  Prejudice/Undue Delay.**

The Port asserts considerable sums already have been spent
on the channel-deepening project, and "any threat to the
[p]roject schedule that renewed litigation would pose would
greatly prejudice the Sponsor Ports and could result in
significant economic harm both to the Ports and to the region
generally."

In addition, the Port argues Plaintiff already had
formulated his objections to the 2003CDEIS by September 2002,
and Plaintiff's assertion now of a claim against the 2003CDEIS is
unreasonable.  The Court disagrees.

First, the Corps's alleged failure to assess adequately the

13 - OPINION AND ORDER

cumulative effects of the channel-deepening dredging activities on the wetlands on and the waters around WHI and the Port's alleged CWA violations accompanying those activities have been issues in this case from the beginning.  The Court, therefore, rejects the Port's characterization of Plaintiff's NEPA claim regarding the 2003CDEIS as "renewed litigation."

Second, Plaintiff asserts the flaws in the 2003CDEIS are virtually identical to the flaws in the 1999CDEIS that were raised in his original Complaint.  Plaintiff could not have made a claim against the 2003CDEIS when he filed his original Complaint in 2000 because the Corps had not yet issued the 2003CDEIS, which supplemented and revised the 1999CDEIS.  If the alleged flaws in the 2003CDEIS and the 1999CDEIS are identical, the legal arguments for and against both documents should be similar.  Moreover, Plaintiff's claims against the original 1999CDEIS were not resolved.[3]

On this record, the Court concludes the Port is not prejudiced by Plaintiff's assertion of a claim against the 2003CDEIS because the Corps has been required to defend against a substantially identical claim arising from the 1999CDEIS.  In addition, the Court finds Plaintiff, acting *pro se,* did not unduly delay asserting his NEPA claim against the 2003CDEIS.

---

[3] The Court denied Federal Defendants' Motion for Summary Judgment on those claims.  Opin. and Order at 38-42.

14 - OPINION AND ORDER

**B.  Interests of Justice.**

The Port asserts Plaintiff seeks to allege legal theories
that have already been decided in *NWEA v. NMFS.*  The Port even
suggests Plaintiff still has the opportunity to participate in
the appeal of that case, which is now pending in the Ninth
Circuit.  This Court already has concluded, however, that the
issues surrounding Plaintiff's NEPA claim as to the 2003CDEIS
were not raised or resolved in *NWEA v. NMFS.*

The Court, therefore, finds the interests of justice would
not be served by denying Plaintiff the opportunity to present his
challenge to the 2003CDEIS in this forum.

Accordingly, the Court grants Plaintiff's Motion for Leave
to Supplement his Complaint for the purpose of asserting a NEPA
claim against the Corps's 2003CDEIS.

## CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### Standards

Fed. R. Civ. P. 56(a) authorizes summary judgment if no
genuine issue exists regarding any material fact and the moving
party is entitled to judgment as a matter of law.  The moving
party must show the absence of an issue of material fact.  *Leisek
v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In
response to a properly supported motion for summary judgment, the
nonmoving party must go beyond the pleadings and show there is a

15 - OPINION AND ORDER

genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## Discussion

**I.    Background.**

In April 2005, Plaintiff moved for partial summary judgment on the ground that the Port violated Section 404 of the CWA, 33

U.S.C. § 1344, in 1996 when it built a containment dike on wetlands on WHI and used dredged spoils from the Columbia River without first obtaining a CWA permit.  According to Plaintiff, the dike restricts the flow of the Columbia River below the Ordinary High Water Line.

In its response to Plaintiff's Motion, the Port conceded, and the Army Corps of Engineers confirmed, the Port built a "berm" in 1996 using spoils dredged by the Corps from the Columbia River after flooding caused a significant amount of sand to accumulate in the navigation channel.  The Port also conceded it did not obtain a permit because it relied on a 1995 wetlands delineation that identified as wetlands only the interior areas of WHI below the elevation of 10.7 feet mean sea level.  The Port disposed of the dredged spoils above that elevation based on that delineation.

After the Port disposed of the spoils, the Corps issued its "1997 Wetlands Delineation" in which it concluded all interior areas of WHI below 12 feet mean sea level rather than 10.7 feet were wetlands.  Based on the 1997 Wetlands Delineation, the Port acknowledged it had inadvertently disposed of some of the dredged spoils on 1.19 acres of wetlands.  The Port advised the Court that it had applied to the Corps for an "after-the-fact" permit, which, if granted, would allow the Port to undertake an approved wetland-mitigation program by providing compensation and

17 - OPINION AND ORDER

mitigation for the unauthorized disposal.

The Court agreed to the Port's request to defer issuing a
ruling on Plaintiff's Motion until after the Corps decided
whether to grant the Port's request for an after-the-fact permit.

In anticipation of the Corps's issuance of the permit, the
Oregon Division of State Lands authorized the Port in June 2005
to proceed with a proposed mitigation plan that included the
creation of 2.0 acres of new wetlands on WHI, the enhancement
of existing wetlands, and other unspecified measures.  On
November 10, 2005, the Corps issued the after-the-fact permit.
Following the issuance of the after-the-fact permit, the Port
filed a Cross-motion for Partial Summary Judgment as to
Plaintiff's claim.

Unfortunately, but not surprisingly given the history of
this case, an unforeseen issue has arisen that further
complicates this matter.  During the Corps's review of the Port's
after-the-fact permit application, Plaintiff submitted extensive
comments, including an assertion that a partially plugged culvert
existed on WHI uplands that had not been identified in the
Corps's 1997 Wetlands Delineations as being within the "waters of
the United States."  The Court previously determined the
jurisdictional reach of the "waters of the United States" extends
to the "Ordinary High Water Mark" around WHI.  According to
Plaintiff, however, the previously unidentified culvert allowed

waters of the United States to reach approximately 20 acres of WHI lands that were within the Port's dredged spoils disposal site.  If that is the case, the Port filled those waters without first obtaining a § 404 permit.  In addition, the Port's request for an after-the-fact permit does not cover this activity.

Accordingly, on November 10, 2005, the same day the Corps issued the after-the-fact permit to the Port authorizing the inadvertent fill of 1.19 acres of wetlands subject to appropriate mitigation measures, the Corps also issued a Public Notice soliciting comments on proposed mitigation measures for the additional 20 acres on which the Port placed dredged spoils.  The comment period expired on December 12, 2005.

The parties have addressed these unforeseen developments in their pending partial summary judgment motions.

## II.  **The Corps's Position**.

Based on the Corps's issuance of an after-the-fact permit authorizing the Port's activities in filling the 1.19 acres of wetlands and the accompanying mitigation authorized by the Oregon Division of State Lands, the Corps contends this Court should:

1.  Deny as moot Plaintiff's Motion for Partial Summary Judgment as to the CWA claim against the Port arising from the

unpermitted fill of 1.19 acres of wetlands.[4]

2.    Allow Plaintiff leave to amend his Complaint to assert a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 500, *et seq.,* challenging the Corps's November 10, 2005, decision to grant the Port an after-the-fact permit.[5]

In addition, the Corps concedes Plaintiff has the right to challenge the Corps's decisions reflected in its Public Notice regarding the proposed mitigation of the unpermitted disposal of dredge spoils on the additional 20 acres of WHI wetlands.

The Corps anticipates filing an Administrative Record in due course regarding its decisions as to the after-the-fact permit and the proposed mitigation on the additional 20 acres of WHI wetlands.  The Corps, however, asserts these decisions should have no bearing on the Court's prior decisions establishing the Ordinary High Water Mark as the jurisdictional reach of United States waters on WHI.

III.  **The Port's Position.**

The Port concurs with the Corps that the issuance of an after-the-fact permit retroactively authorizing the fill of 1.19

---

[4] Plaintiff's claim regarding the Port's unpermitted filling of 1.19 acres of wetlands on WHI arose under Section 301(a) of the CWA, 33 U.S.C § 1311(a).  This Court has jurisdiction of such a claim pursuant to the citizen suit provisions of the CWA, 33 U.S.C. § 1365.

[5] A challenge to the Corps's issuance of the after-the-fact permit would arise from the review process used by the Corps. Jurisdiction for judicial review would lie under the APA.

acres of WHI wetlands renders moot Plaintiff's CWA claim against the Port regarding that fill.

The Port, however, disagrees with the Corps's assertion that Plaintiff should be allowed to amend his Complaint to assert APA claims as to the Corps's issuance of the after-the-fact permit and the Corps's decision to issue a Public Notice regarding comments on proposed mitigation actions necessitated by the newly-discovered, unpermitted fill of 20 additional acres of WHI uplands. The Port asserts neither decision represents a final agency action for purposes of judicial review under the APA. 5 U.S.C. § 704.

In addition, the Port, like the Corps, argues the Court's prior determination of the jurisdictional limits of the waters of the United States around WHI is final and may not be disturbed. At first blush, this argument seems to be consistent with the Corps's position. The Port, however, believes the Corps overstepped its legal authority in its November 10, 2005, Public Notice because the Corps, without any admissible evidentiary support, has extended the jurisdictional reach of the CWA beyond this Court's prior rulings in order to take into account waters of the United States that found their way to WHI uplands via the recently discovered culvert.

**IV. Plaintiff's Response.**

Plaintiff contends the Corps's decision to grant an after-

21 - OPINION AND ORDER

the-fact permit to the Port and to issue a Public Notice for comment regarding mitigation proposals for the newly-discovered 20 acres of wetlands, reflect "*post hoc* agency actions [by the Corps] designed to cover the illegal actions of both the Corps and the Port."  In addition, Plaintiff argues that this Court "is not obligated to use the Corps's "[1997 Wetlands Delineation] in considering Plaintiff's CWA claims" because the unlawful filling activity occurred in 1996, *i.e.*, before that delineation was determined.  Plaintiff argues, as he has repeatedly in the numerous prior summary judgment motions, that a 1986 delineation establishes the jurisdictional limits of the CWA relating to WHI.

## **Analysis**

The only issue now pending on the partial summary judgment cross-motions is the impact of the newly issued after-the-fact permit.  There is no dispute that the Port unlawfully filled 1.19 acres of WHI wetlands.  The Port, however, now asserts the Corps's issuance of an after-the-fact permit constitutes retroactive authorization for that unlawful activity.

CWA after-the fact permits are governed by 33 CFR § 326.3, which provides:

> (e) After-the-fact permit applications.
>
> (1) Following the completion of any required initial corrective measures, the district engineer will accept an after-the-fact permit application unless he determines that one of the exceptions listed in subparagraphs i-iv below is applicable.  Applications for

22 - OPINION AND ORDER

after-the-fact permits will be processed in
accordance with the applicable procedures in
33 CFR Parts 320-325.  Situations where no
permit application will be processed or where
the acceptance of a permit application must
be deferred are as follows:

> (i) No permit application will be
> processed when restoration of the waters
> of the United States has been completed
> that eliminates current and future
> detrimental impacts to the satisfaction
> of the district engineer.

> (ii) No permit application will be
> accepted in connection with a
> violation where the district
> engineer determines that legal
> action is appropriate (§ 326.5(a))
> until such legal action has been
> completed.

> (iii) No permit application will be
> accepted where a Federal, state, or
> local authorization or certification,
> required by Federal law, has already
> been denied.

> (iv) No permit application will be
> accepted nor will the processing of an
> application be continued when the
> district engineer is aware of
> enforcement litigation that has been
> initiated by other Federal, state, or
> local regulatory agencies, unless he
> determines that concurrent processing of
> an after-the-fact permit application is
> clearly appropriate.

The issuance of an after-the-fact permit subject to the

fulfillment of required mitigation provides retroactive

authorization to individuals who discharge materials into United

States waters, including wetlands.  *Florida Keys Citizens*

*Coalition Inc. v. West,* 996 F. Supp. 1254, 1255 (S.D. Fla. 1998).

23 - OPINION AND ORDER

If valid under the APA, such authorization in this case will render moot Plaintiff's CWA claim against the Port, and the Port will be entitled to partial summary judgment as to this claim. The question as to whether the after-the-fact permit was issued in compliance with the APA, however, is not now before the Court.

Although the Court agrees with the Corps that Plaintiff's Motion for Partial Summary Judgment will be moot if the after-the-fact permit is valid, Plaintiff's Motion may be well-taken if the after-the-fact permit is subsequently determined to be invalid. Thus, until there is a determination of the validity of the after-the-fact permit, Plaintiff's Motion appears to be premature rather than moot.

Plaintiff has raised questions as to the validity of the after-the-fact permit, including, *inter alia*, (1) whether the Port is a repeat offender under regulations issued by the Corps, *see* 33 C.F.R. Part 326.1, and, if so, what are the consequences of that status and (2) whether the issuance of the after-the-fact permit should have been deferred until this action was resolved. *See* 33 C.F.R. Part 326.1.e.(iv).[6]

In addition, the new development regarding the Port's inadvertent disposal of dredged materials onto 20 acres of WHI

---

[6] Notwithstanding Plaintiff's repeated requests, the Court reiterates it will not reconsider prior rulings that establish the Ordinary High Water Mark generally as the jurisdictional limit of the CWA regarding waters of the United States around WHI.

that contain United States waters not previously identified as such by the Corps raises other issues, including (1) whether the Corps's decision on mitigation is a final agency action that is subject to judicial review under the APA, and if so, (2) whether the scope of the Corps's mitigation requirements is appropriate.

The Court agrees with the Corps that Plaintiff should have the opportunity to address those issues by supplementing his Complaint.

Accordingly, the Court concludes both Plaintiff's Motion for Partial Summary Judgment and the Port's Cross-Motion for Partial Summary Judgment regarding the Port's unpermitted filling of wetlands on WHI are premature pending resolution of issues pertaining to both the validity of the Corps's after-the-fact permit and the inadvertent disposal of dredged materials onto 20 acres of WHI wetlands.


## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion for Leave to Amend or Supplement Complaint (#564), **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment (#494), and **DENIES** the Port's Cross-Motion for Partial Summary Judgment (#588).

The Court specifically **GRANTS** Plaintiff leave to file a Supplemental Complaint no later than April 3, 2006, for the sole purpose of asserting

25 - OPINION AND ORDER

(1) a NEPA claim against the Corps's 2003CDEIS and

(2) APA claims as to

    (a) Defendant Corps's issuance of an after-the-
fact permit to Defendant Port on or about
November 10, 2005, and

    (b) Defendant Corps's November 10, 2005, Public
Notice and resulting decision setting forth
the mitigation proposals for the Port's
inadvertent disposal of dredged materials on
an additional 20 acres on WHI.

IT IS SO ORDERED.

DATED this 13th day of March, 2006.


                    /s/ Anna J. Brown

                    _____
                    ANNA J. BROWN
                    United States District Judge


                    JonesCV00-1795-MotAmend-mf.3-13-06.wpd